## H. D. Blackshear v. The State.

No. 20225.  Delivered May 17, 1939.
Rehearing Denied June 14, 1939.

The opinion states the case.

*Chas. A. Keilin,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Judge.
Conviction is for robbery, punishment assessed being fifty years in the penitentiary.

About noon on March 6, 1937, a pay roll of $3,000 was delivered to the A-B-C Store at 6740 Harrisburg Boulevard in Houston. The money was locked in the safe. Within ten minutes after the delivery of the money five robbers, each armed with a gun of some kind, appeared at the store and demanded the sack of money which had just been received. They were told that the manager of the store—the only one who knew the combination to the safe—had gone to lunch. Upon being apprised of this fact the robbers took from Roy A. Reid, who had charge of the cash register, the sum of $230.00. Reid described one of the robbers as a tall man in general appearance resembling appellant, with similar nose and ears. His face, excepting the nose and ears, was covered with bandages and adhesive tape. He was wearing a dirty, light colored raincoat. Two of the employees in the store identified appellant as one of the robbers, notwithstanding his disguise. As the robbers fled from the store in a car they were pursued by officers and a running gun battle ensued which continued for many blocks. Appellant was identified positively by a witness who saw him and another of the robbers during the flight after the robbery. Other employees of the store declined to identify appellant as one of the robbers, but affirmed that his height and general build corresponded to one of them. Appellant testified in his own behalf and denied participation in the robbery.

Appellant was jointly indicted with Doyle Phifer. Bill of exception number two recites that appellant filed a written motion for severance asking that Phifer be first placed upon trial; that the attorney for Phifer had made an oral request for severance seeking to have appellant first tried; that the trial court directed that appellant go to trial first, before

Phifer's written request for severance was prepared.

The bill of exception bears the following explanation and qualification over the trial judge's signature. "\* \* \* the court is not certifying that Mr. Foreman made only an oral motion for a severance, but the facts are that if Mr. Foreman made an oral motion in the beginning, said motion was reduced to writing before the court passed upon it, and before the trial proceeded, whereupon there were before the court two identical motions, both as the court understands complying with the law, where each defendant asked that the other he placed on trial first, whereupon State's counsel stated to the court that they desired that Blackshear be placed upon trial first, and it was so ordered by the court."

The point is made that the qualification is really a contradiction of the recitals in the bill which should not be permitted. Appellant cites us to Tyson v. State, 14 Texas Cr. App. 388; Hinton v. State, 65 Texas Cr. R. 408, 144 S. W. 617, and other cases as supporting his position. The generally accepted rule is stated in 4 Texas Jur., Sec. 194, p. 278, as follows: "If appellant accepts and files a bill with a qualification he is bound by the qualification, which will not only be accepted by the appellate court as correct, but will also control in so far as it is in conflict with the bill as prepared by the appellant's counsel. Moreover, the appellate court will presume that qualifications in a duly certified bill were made with the consent of the accused or his counsel unless the contrary appears over the certificate of the trial judge, and it will accept as correct qualifications to which no objections are filed or no exception taken, in the court below, \* \* \*"

Numerous supporting authorities are cited in the notes under the quoted text. The qualification here shown having been accepted without objection renders the bill without merit.

Stodghill and King were police officers in Houston. They reached the A-B-C Store just as the robbers left. The officers pursued in their car. Because several bills of exception complain of certain evidence given by Stodghill we condense his testimony, omitting parts not pertinent. "\* \* \* as we started in pursuit of that car, it entered the underpass on Wayside Drive, which was about a block and a half away. We saw that car as it came out on the other side of the underpass. As we emerged from the underpass \* \* \* someone in the car that we were pursuing started firing at us. We kept following behind the car. It continued on Wayside, and turned to the right on Lawndale, then turned left on to Dismuke, and con-

tinued on where it enters the Old Spanish Trail Highway, and they traveled in that direction until they came to the Calhoun Road, and they there turned to the right. Just after you turn to the right on Calhoun Road there is a residence there just beyond the intersection. * * * It is the Bowman residence. Over that route I would say that approximately fifty shots were fired at us from that car. They were not fired at any one particular place, but the firing was general over the entire route. Our automobile was struck in five places by bullets. We were about a block or more behind the car at all times, but we got a little bit closer as they neared the corner of Calhoun Road. They had to slow down to turn the corner there, and at that time we got pretty close to them, and something struck our car there. The car was struck several places at the same time, a bullet went in one of our tires there. Our car was struck five times altogether; there were five bullet marks on the car. When the car we were following got to the Bowman house it stopped. There was an automobile parked across the ditch on a little bridge near the Bowman home, and the car we were following stopped directly behind that automobile. Four men got out of the car we had been following, and went around to this car that was parked there, *and one or two of them got in it.* There was a negro around that car at the time; he appeared to be washing the car, and when the four men got out of their car some shooting took place there. I don't know how many shots were fired; they were firing at us, and there were two or three different guns fired right together there. * * * The Henderson School is located along the route we followed that car. The playground of that school extends out to Dismuke Street. There was some firing done on Dismuke Street. Down the Calhoun Road beyond the Bowman home about two blocks is another residence. It is on the opposite side of the street from the Bowman home; it is near McGregor Park. After the firing at the Bowman home those men got back in their automobile and drove off. They drove straight ahead, the direction they were headed. Our car was disabled right where we made the turn, and their car then disappeared from our sight. * * * I next saw that automobile about thirty minutes after it disappeared from our sight. When I next saw that car it was on McGregor Drive right near Scott Street, which is about a mile * * * beyond the Flanagan home. I examined that automobile there; it had two bullet holes in the right hand side of it, and it had one bullet hole in the rear window on the right hand side, and the glass in the back of the car was knocked

out. It had two flat tires, and there were several empty hulls inside. * * *"

The house referred to by the witness as about two blocks "down the Calhoun Road" from Bowman place is shown by other evidence to have been the Flanagan residence.

Bill number one complains of the admission of the officer's testimony regarding the shooting in the vicinity of the Henderson School. Bill number three complains at the testimony that parties in the fleeing car began shooting at the officers when their car emerged from the underpass. Bill number four and bill number nine bring forward complaint at the evidence of the officer regarding the shooting from the bandit car all along the line of flight and near the Bowman residence. The objections were that it showed other offenses than the one for which appellant was on trial and that it was not shown that the parties in the fleeing car were participants in the robbery at the store. The court qualified the bills by stating that the evidence did show that the parties in the car were the robbers and appellant had been identified as one of them. The record supports the qualification. The evidence was properly admitted as res gestae of the transaction. All of the evidence related circumstances of the uninterrupted flight of the robbers which resulted in their temporary escape.

Bill. of exception number eleven is similar to bills one, three, four and nine heretofore discussed, but relates to the testimony of the witness Priest. He was traveling in a car in the same direction the bandit car was going. He heard shooting behind him and looking back witnessed the occurrence in front of the Bowman residence as shown in Stodghill's evidence heretofore related. Priest backed his car to within fifty feet of the men who were shooting in front of the Bowman home. He then started forward again toward the Flanagan home. The robbers jumped in their car and came on behind the witness, firing two shots. Witness turned into the driveway of the Flanagan home, left his car and ran into said home through the back door. Two of the men got out of the bandit car. Witness identified them as appellant and Phifer. After witness ran into the house Phifer fired into the house with a sawed off shotgun. The charge of buckshot struck near where Mrs. Flanagan was standing in the house. Appellant objected to all the testimony of Priest as above related as being evidence of another offense having no relation to the one on trial, and as no part of the res gestae. It is pointed out in the bill that the officers' car had already been disabled and they were no

longer engaged in the pursuit at the time of the incident testified to by Priest. It is true the officers' car was disabled. The evidence supports the inference that the robbers' car had also suffered injury from the officers' fire, and that the robbers were trying to commandeer the car which was at the Bowman home. The act of Priest in backing his car towards that point may have caused them to believe he was in some way trying to interfere with their flight, or to get in a position to identify them. The facts related by the witness were incident to his identification of two of them, and were connected with the uninterrupted flight of the robbers. We are of opinion the evidence was properly admitted. See Thompsan v. State, 90 Texas Cr. R. 15, 234 S. W. 401; Taylor v. State, 90 S. W. 647.

Bill number five complains because over appellant's objection Police Officer McGrew was permitted to testify that the next day after the robbery he saw appellant about noon at the police station and at that time: "I observed the defendant's face. When I observed him, there on his right chin, he had a small cut place; his right eye was black, and he had a lot of mud on his face; his clothes were muddy, and the right knee of his pants was torn out, and right along his temple was a sticky looking stuff, and right under his jaw he had some more of the same stuff; it was dirty because Blackshear was dirty and muddy himself. The sticky substance I saw on his face was matted." The objection urged to the testimony quoted was because appellant was under arrest at the time he was observed by the officer giving the testimony. There is no merit in the bill.

Bill of exception number six recites that appellant had testified that at the time of his arrest about midnight of the day of the robbery he had no marks on his face except a cut on his chin. The bill further recites that on the next day when he was brought out with other prisoners to be viewed by witnesses Kersh, McCandless and others to see if they could identify him as one of the robbers of the A-B-C Store appellant's appearance was changed. He proposed to testify in this connection as follows: "* * * that violence by the police officers who had him in charge was used on him during the morning of March 27, 1938, and that as a result of such violence, both of his lips were swelled to twice their normal size, that he had two black eyes, and that his chin was swollen, and that he got in this condition before being viewed by the two witnesses above set out, and by other people who had been brought in in an attempt to identify him."

This evidence was excluded on objection by the State. It is apparent that appellant desired to get before the jury his statement that his claimed change in personal appearance was brought about by the mistreatment of some unnamed member of the police department. It was not claimed that if any such mistreatment occurred that any witness who testified in the case was responsible for or administered it. The court qualified the bill by showing that no question of a confession was involved as no confession by appellant was used or offered in evidence. It is urged that the claimed altered condition of appellant's face was pertinent on the issue of his identity and was relevant on the weight to be given the testimony of the identifying witnesses. Conceding this to be true, we observe that appellant was permitted to testify—as is shown in the statement of facts—as follows: "When I was first brought to the police station after my arrest my lip was split, but there were no other marks or bruises on my face. After they brought me back from the Magnolia Park police station both of my lips were swelled to twice their normal size, and I had two black eyes, and my chin was swollen. It was on Saturday that my face got in the condition I have described, I would say around noon."

Upon the question of identity and changed personal appearance it was the fact of the change, if any, and not what produced it. In the condition of the record we are of opinion that bill six fails to reflect reversible error.

Bill of exception number seven reflects the following incident. Denman Kersh, an employee of the A-B-C- Store testified at the trial and identified appellant as one of the robbers. The taking of evidence was concluded in the afternoon and all witnesses were excused. The next morning appellant tendered two witnesses by whom he proposed to prove that Kersh had told them he would change his testimony if he could; that he was wrong in his testimony identifying appellant, but he had testified before the grand jury and was afraid to change his testimony for fear he would be indicted for perjury. The court declined to admit the proffered impeaching testimony. No predicate had been laid therefor when Kersh was on the witness stand, and it does not appear that appellant asked to have Kersh placed back on the witness stand for the purpose of laying a predicate. The ruling of the court under the circumstances was not error.

Bill number eight reflects that appellant, Sherwood Vinson, Doyle Phifer and Bobbie Harris had been arrested at Vinson's

house and some money, the amount of which was not known, in five and ten dollar bills, had been found in the possession of Bobbie Harris, and that at the time of the robbery and arrest appellant was living with Sherwood Vinson. Appellant then offered to prove by one Heyman that he had bought Vinson's liquor store about February 12 or 13 and delivered to Vinson a check for eleven hundred dollars. This proffered testimony was excluded on objection by the State, to which ruling appellant brings forward complaint. We confess we are unable to see the relevancy of the proposed testimony. The fact that the officers found no money on Vinson, Phifer or appellant, but did find some money on Harris, apparently has no connection with the fact, if it was a fact, that Vinson had sold his liquor store to Heyman and received eleven hundred dollars for it in February. We think the bill fails to reflect error.

Bill of exception number twelve relates to an offer to prove by a third person a purported statement of another party that he and other persons robbed the A-B-C Store, and that the persons charged therewith, including this appellant, were not guilty. The present case was not one on circumstantial evidence. The following cases support the trial court's action in excluding the proffered testimony. Staton v. State, 93 Texas Cr. R. 356, 248 S. W. 356; Stone v. State; 98 Texas Cr. R. 364, 265 S. W. 900; Bassett v. State, 20 S. W. (2d) 766.

Bill of exception number thirteen shows that appellant requested the court to instruct the jury that the evidence regarding the shooting at the police car, at the Bowman residence, and at the Flanagan home could not be considered for any purpose unless the jury found from the evidence beyond a reasonable doubt that appellant was guilty of the offense for which he was on trial, and even then that such shooting could not be considered in determining the punishment. The evidence thus sought to be limited having properly been admitted as a part of the res gestae of the main case the court was not in error in declining the requested instruction.

Bill number ten brings forward exceptions to the charge of the court. We have examined same in connection with the charge and find nothing calling for discussion. The complaint that the court failed to charge on circumstantial evidence has no foundation as the case as made was not one of circumstantial evidence, and therefore, called for no instruction on the subject.

We think it proper to say that bills of exception three, five, eight, nine, ten, twelve and thirteen are not briefed by

counsel for appellant, but there being no express abandonment thereof, we have considered and disposed of them as heretofore indicated.

Believing that the record presents no error upon which reversal may be predicated, the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

After carefully examining the record in the light of appellant's motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.