### Sandy Blocker v. The State.

No. 4127. Decided December 10, 1908.

**1.—Murder—Evidence—Imputing Crime to Another.**

Where upon trial for murder the evidence was wholly circumstantial and the motive of another, who had not been acting together in the homicide with the defendant, was as strong on his part as it was on the part of the defendant, it was error in refusing to admit testimony that this third party had declared that he killed deceased. Following Dubose v. State, 10 Texas Crim. App., 230.

**2.—Same—Threats—Evidence.**

Where upon trial for murder an objection was made to a question by the State's counsel on cross-examination of defendant whether he did not say that he was a nephew of a certain notorious character, and that he would kill deceased if he did not quit coming to see a certain negro woman about whom

there was a rivalry between defendant and deceased, and the question was not answered; but on motion for a new trial defendant complained that this question connecting defendant with this notorious character inflamed the mind of the jury, etc. Held, that if the threat was made before the homicide it was admissible in evidence.

**3.—Same—Charge of Court—Self-Defense—Character and Disposition of Deceased—Harmless Error.**

Where upon trial for murder there was some evidence as to the character and disposition of the deceased, though not cogent, and perhaps no evidence of the relative strength of the parties, unless it be found in the fact that they knew each other well etc., and the court charged upon this phase of the case, the question was not of sufficient moment to require a reversal; but trial courts in this as other cases are reminded that where matters of this sort are not in evidence before the jury that it is well enough to omit them from the charge.

**4.—Same—Imputing Crime to Another—Charge of Court.**

Where upon trial for murder the evidence showed that another party was in position to be the slayer of the deceased, as well as circumstances that would put it beyond probability that defendant did it, and the court charged that if it was as probable that the other party did the killing as that the defendant did it to acquit the defendant, there was no error.

Appeal from the District Court of Limestone. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*James Kimbell* and *Harper, Jackson & Harper,* for appellant.—On question of court's charge and imputing crime to another: Armstead v. State, 48 Texas Crim. Rep., 304; 13 Texas Ct. Rep., 507.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at twenty years confinement in the penitentiary.

The evidence shows that appellant and deceased were somewhat in rivalry for the affection and favors of a negro woman, whose chastity, under the evidence, was not above suspicion. On the night of and previous to the homicide these two negroes met at the house where the woman, whose name is Delia Nobles, resided. The evidence further discloses that deceased, a married man, had perhaps outstripped his rival, appellant, in the race for the affections of Delia Nobles. On taking his departure from the house of Delia Nobles, on the night of the homicide, appellant left the deceased with her. Within half an hour the deceased left, and a few moments later the report of a gun was heard. Early the following morning the body of deceased was found lying by the road side, shot in the head over the left eye. The State relied upon some threats of a qualified nature on the part of appellant against deceased, and the

ill-will and ill-feeling existing or that had prior thereto existed, together with the fact that a gun was found at the residence of appellant, one barrel of which had been recently discharged. It seems that no foot tracks were found in close proximity to the body. Some distance away bare-foot tracks were found, showing that the party who made the tracks was moving rather rapidly, the tracks being something like five feet apart. They did not go in the direction of appellant's residence. There is some evidence showing at another point some distance away from the body a shoe track was found, one of them indicating that it was made by a run-down shoe, and there is some evidence indicating that appellant owned a run-down shoe. The evidence further discloses that deceased had a double-barrel shotgun, which was found lying under his body, both barrels of which had been snapped as indicated by the indentation on the cartridges contained in the barrels. This gun belonged to Aaron Massey. Aaron Massey was unable to account for how deceased obtained possession of his gun. He stated that he had loaned the gun the day before to a friend who, it is shown, had returned it. Aaron Massey had married the divorced wife of the deceased, the deceased having married another woman subsequent to the divorce from the then wife of Aaron Massey. Aaron Massey and his wife had separated, and the deceased had become more or less attentive to his former wife, which may have been the cause of the separation between she and Aaron Massey. It is further shown that Aaron Massey was riding about the country on the night of the tragedy, and it was a theory under the testimony and urged by appellant that Massey did the killing. On account of the evidence of tracks and other matters there may have been other parties interested in the killing of the deceased. The case is one purely of circumstantial evidence.

On the trial Boyd was offered as a witness. The bill recites the following facts would have been proved by this witness had he been permitted to testify: "L. B. Boyd would have testified that he knew Aaron Massey, and that two nights after the killing of Henry Demons he was in Thompson & Schonberg's saloon; that Aaron Massey came in, and was drinking and talking to other negroes, and that he, Boyd, was called to the rear, and while in the rear of the saloon, he saw the negroes pushing and pulling Aaron Massey out of the back door of the saloon; that Aaron Massey was cursing and said, 'I killed the God damned, black son-of-a-bitch,' when the other negroes said, 'Hush, you had better stop talking, if you do not they will get you,' and Massey replied, 'They can send me to the penitentiary or to hell if they want to, I killed him, God damn him.'" On objection by the State this testimony was excluded. It has been the rule in Texas since the rendition of the case of Dubose v. State, 10 Texas Crim. App., 230, especially in cases of circumstantial evidence, that where an accused is being tried for a homicide, it is

legitimate and proper to introduce evidence that another party or other parties were in position to have committed the homicide; and motive and other matters of that character are also admissible to show a reason why the others and not the accused party committed the homicide. We deem it unnecessary here to collate these authorities. There is, however, an unbroken line of decisions in the reports of this court so holding. We are of opinion this testimony was admissible under the circumstances stated. The motive was as strong on the part of Aaron Massey as it was on the part of appellant. It would be a self-evident proposition if Aaron Massey killed deceased, appellant not being present or aiding in any manner in the homicide, that appellant would not be guilty, and, as we understand the record, there is nothing in it indicating that appellant and Aaron Massey were acting together in the homicide, if either of them killed deceased.

While appellant was on the stand, the State was permitted to ask him the following question: "If he had not told Delia Nobles prior to the killing that he, defendant, was a nephew of Merrick Trammell, that he was a bad negro, and if she did not stop Henry Demons from coming to see her, he would kill Henry Demons, and then he would kill her." Objection was urged to this, and the question was not answered. There was some evidence introduced on motion for new trial in regard to this matter, and it would seem from this that Merrick Trammell had been years ago a negro of a very unsavory reputation in that county, and mention of his name to a jury had a tendency to inflame their minds against parties who were related to him. It was stated that Merrick Trammell and those with whom he acted, were held responsible for the killing of Clendennon and Applewhite, and that he was always believed to have been implicated in the death of John Love. That a feeling against Merrick Trammell and those with whom he is said to have acted in killing the parties above named offended the white people to such an extent that they went to the Navasota bottom and hung negroes as they came to them, and that this feeling of bitterness has been carried and is still carried against the relatives and descendants of Merrick Trammell. The district attorney testifies that he asked the question thinking that he could prove by Delia Nobles that the threat was made prior to the killing and not subsequent, but upon investigating the matter, after the objection was raised, he discovered that he could not do this, and whatever conversation occurred between appellant and Delia Nobles was subsequent to the killing. Therefore, the objection was admitted to be well taken, and the question was not answered. This will not occur upon another trial under the facts as stated. It is not intended to say that the threat as stated would not be admissible if made before the homicide. We are of opinion under such circumstances it would be admissible.

Objection was urged to the following clause of the court's charge:

"If from the evidence you believe that the defendant killed said Henry Demons, but further believe that at the time of so. doing, the deceased had made an attack on him, which from the manner and character of it, and the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation· or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear the defendant killed the deceased, then you should acquit him." Objections were urged that the charge was improper, and did not correctly state the law of self-defense as applicable to this case, in that said charge had no evidence upon which to predicate it; and further, there was no testimony as to the relative strength of the parties, or of the defendant's knowledge of the character and disposition of the deceased; that it was calculated to mislead the jury in that they believed that there must be ·evidence of the defendant's knowledge of the character and disposition of the deceased, otherwise the law of self-defense would not apply. Where there is no evidence as to the relative strength of the parties or the character and disposition of the deceased, there is no occasion for charging the jury in regard to these matters, and such charge, in the absence of evidence justifying it, has been held error. This may or may not be reversible. See Hickey v. State, 45 Texas Crim. Rep., 297, and Brady v. State, 56 S. W. Rep., 521. In the case of Benson v. State, 51 Texas Crim. Rep., 367, the same charge was given as here criticised. Speaking of this particular question, the court, on page 375, used the following language: "In regard to the other proposition, in support of his contention, appellant refers us to Wallace v. State, 50 Texas Crim. Rep., 374; 97 S. W. Rep., 471; Hickey v. State, 45 Texas Crim. Rep., 297; 76 S. W. Rep., 921, and Brady v. State, 65 S. W. Rep., 521, and some other cases. While it may be conceded that a charge of this character should not be given in the absence of some testimony suggesting the character of deceased and appellant's knowledge thereof, the question presented here is, was this charge, though in the absence of any testimony regarding deceased's character, such as to have injuriously affected appellant's rights. The question presents itself in a common sense point of view: would the ordinary juror believe from this charge that there must be in evidence some testimony in regard to the relative strength of the parties, and knowledge thereof on the part of appellant before he could avail himself of the right of self-defense. To so hold, it occurs to us, would be to impute to the jurors a lack of ordinary intelligence, but beyond this, while the court gave a charge on self-defense in favor of appellant, both the one quoted above and the succeeding. one coupled with threats to take life, we do not believe that the record, as here presented, upon this point, entitled ·appellant to a charge on this subject at all. So far as the testimony of the State's witnesses are concerned, as to this homicide, it was an unprovoked murder. These witnesses show

that the appellant was the aggressor from start to finish; before the parties got on the street car, appellant asked Beulah Miller, who was a stranger to him, who was her man, and she replied that she did not have a man, that she was married, and appellant replied that he did not know whether she was a man or a woman; did not know whether she was married or not." The above is a quotation from the Benson case. This is some qualification of prior decisions. In this case there is some evidence on the part of appellant as to the character and disposition of the deceased, though not cogent. For instance, he details himself a personal difficulty occurring between himself and deceased about two months prior to the homicide, in which the deceased stabbed him with a knife. The theory of the State is that that difficulty grew out of their relation with the woman Delia Nobles, or at least it was on account of her that the killing may have occurred. They had, however, in the meantime made friends. It seems to be practically certain also from the evidence that the parties knew each other well, and had so known each other. While this is not very cogent evidence, still in view of all the facts we believe that portion of the charge which relates to this phase of the case would not be of sufficient moment to require a reversal. There is no evidence of the relative strength of the parties unless it be found in what is above stated. As the judgment will be reversed on other questions, we will call attention of the trial court in this as well as all other cases, that where matters of this sort are not in evidence before the jury, it is well enough to omit them from the charge. If the deceased was snapping his gun at appellant at the time of the homicide, it would rationally occur that the relative strength and size of the parties, their disposition, etc., should not curtail the right of self-defense. A shotgun loaded would be as dangerous in the hands of a man of one size as of another size, and a charge of the character given in regard to relative strength and size of the parties, etc., would certainly not be called for by such a state of facts. We would urge again, that the trial courts in giving charges in regard to the law of a case, should confine their instructions to the case developed by the facts. There is no necessity for going beyond the facts and putting into the instructions matters not called for by the evidence.

As before stated, this is a case purely of circumstantial evidence, and appellant not only denied having killed the deceased, and introduced cogent evidence along that line, but introduced evidence also both directly and indirectly that placed Aaron Massey in a possible, if not probable, position, to be the slayer of the deceased, as well as circumstances that would put it beyond the probability that he did it. Without going into a detailed statement of the facts further than has been done, we think the issue was made sharply that Aaron Massey had equal opportunity and as strong motive as did appellant. In this case the court gave the following charge: "If you deem it

as probable that Aaron Massey killed Henry Demons, as that defendant killed him, you will acquit him, and unless you are satisfied beyond a reasonable doubt that Massey did not kill Demons, you will acquit him." We are of opinion that this charge taken as a whole is not erroneous.

There is some evidence that we have not heretofore alluded to, perhaps, that it will be well enough to mention. Appellant introduced evidence to show that he had fired his gun the evening before and killed a hawk. If this is true, it fully accounts for the fact that one barrel of the gun had been recently discharged. On this phase of the testimony, as we understand the record, the State introduced no evidence in contradiction. Boyd testified that he heard the shot which was supposed to have killed the deceased, and in about fifteen minutes Massey appeared at the saloon and was very much excited; pulled off his overcoat, gave it to a party and left. Boyd was guard of the county convicts, and he is the witness by whom defendant offered to prove on the second night after the homicide that Massey made the confessions and statements rejected by the court above discussed. It is perhaps well enough to state here, in a general way, that this killing occurred in rather a thickly settled neighborhood, and there were quite a number of houses not far away from the scene of the homicide.

For the reasons indicated, we believe this judgment ought to be reversed and the appellant awarded another trial, and it is accordingly so ordered.

*Reversed and remanded.*