## Murry Staton v. The State.

### No. 7077.   Decided January 31, 1923.

**1.—Theft of Cattle—Grand Jury—Owner of Stolen Property.**
Upon trial of theft of cattle, where the defendant objected to the indictment and insisted that it should be quashed because he had discovered since the trial began that the owner of the stolen property was on the grand jury, the motion was correctly overruled, as the bill of exceptions failed to show whether the defendant was in jail or on bond when the grand jury convened, or to present any excuse why he could not have exercised the right of challenge in limine provided in Article 409, C. C. P.

**2.—Same—Evidence—Practice in Trial Court.**
In view of the evidence showing the statement objected to to have been false it could not be proved as a criminative fact against the accused and there was no error.

**3.—Same—Continuance—Declarations of Third Party.**
In the instant case the State's evidence indicated that defendant and another acted together in the theft; it was not a case of depending wholly upon circumstantial evidence, and is therefore not within the exception that the declarations of a third party that he had committed the theft should be received in evidence for the accused, and there was no error in the court's excluding the same.   Following Greenwood v. State, 84 Texas Crim. Rep., 548, and other cases.

**4.—Same—Continuance—Practice on Appeal.**
In view of the development of the evidence upon the trial and the uncertain character of the proposed testimony as shown by the application for continuance, there was no error in overruling the application.

**5.—Same—Evidence—Cross Examination—Conversation.**
Where a State witness had testified but had not been asked about any conversation with another party, and on cross-examination it was elicited that said third party had told the witness he had bought a yearling and wanted witness to help him kill it, there was no error in permitting the State to develop the whole conversation on the same subject.

**6.—Same—Evidence—Date of Offense.**
Where the State was permitted to ask the witness when he heard about that yearling being stolen, and he answered that he thought it was on Monday or Tuesday after the yearling had been stolen on Friday, and the evidence being undisputed that the animal had been stolen on Friday, there was no reversible error.

**7.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**
Where it appeared from the record that both defendant and his companion were indicted as principals, and the argument of State's counsel that the defense was fabrication, that defendant furnished the meat and his companion peddled it out was a reasonable deduction from the evidence, and not an allusion to defedant's failure to testify, there is no reversible error.

Appeal from the District Court of Titus. Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wilkinson & Cook,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was indicted for theft of cattle from A. P. King, W. H., C. G., and Virgil Hughes, who were alleged to be joint owners. Conviction followed, with an assessed punishment of two years in the penitentiary.

A. P. King testified for the State that he owned cattle jointly with the other parties named in the indictment; that of his own knowledge he did not know whether one had been stolen but if one had been taken it was without his consent. It developed on cross-examination that King was a member of the grand jury which returned the indictment. Appellant filed a motion requesting permission to withdraw his announcement, and insisted that the indictment should be quashed because King was on the grand jury. The motion seems to be based on the proposition that he should not have been permitted to be present while the grand jury was investigating and voting on the question, but "should have retired and left the matter with the rest of the grand jury." The cases cited by appellant are not in point. They are ones where the district attorney, or some other unauthorized person, was present while the grand jury was "deliberating or voting upon the accusation." The principle would not apply to one who was regularly impaneled as a grand juror. To solve that question it is necessary to have recourse to Article 413 of our Code of Criminal Procedure. It will be readily seen from an examination of the articles immediately preceding (390 to 411 inclusive) that the matter urged against the grand juror is not a *disqualification.* Article 413, C. C. P., provides: "A challenge to a particular grand juror may be made orally, and for the following causes only." Subdivision 2, "That he is the prosecutor upon an accusation against the person making the challenge." Conceding that King comes within the provisions of subdivision two, and would have been subject to challenge at the instance of appellant, when does the challenge have to be interposed? Article 409 C. C. P., reads:

"Any person, *before the grand jury has been impaneled,* may challenge the array of jurors, or any person presented as a grand juror; *and in no other way,* shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county

shall, upon his request, be brought into court to make such challenge."

The latest consideration of said article, and the exceptions thereto, was in Robinson v. State, 92 Texas Crim. Rep., 527 (For collation of other authorities, see notes under said article 409 in 2d Volume, Vernon's Crim. Statutes.) The bill presenting this question for review fails to bring appellant within any of the exceptions which would excuse him from having challenged the grand juror before impanelment. It is stated in the bill that "the facts are such that this defendant or his attorneys had no way or notice to take advantage of this procedure," that is of challenge in limine. The facts are not set out, and the statement appears merely as a conclusion, and as a reason why the court should have considered the motion to quash. It is not a certification by the trial judge of the correctness of the statement. The alleged theft is shown to have been committed in September. The grand jury which returned the indictment convened in January following. The bill fails to show whether appellant was in jail or on bond when the grand jury convened, and fails to present an excuse why, in either event, he could not have exercised the right of challenge in limine provided in Article 409 (*supra*).

W. H. Hughes testified substantially that in May, 1921, he purchased in a trade the stolen animal from appellant. Appellant had been milking the mother of the yearling. The yearling run in the pasture on what was known as the old Kelly place. Some time in September, from a source undisclosed in the record, Hughes received information on Monday that this animal had been killed on the Friday preceding. As a result of this information he found the head of the animal in a pool of water on the Kelly place. He also received information that one Less Holder had peddled some beef on the Saturday before. Hughes on this same day, Monday, asked appellant if he knew anything about the killing of the yearling, which appellant at that time denied. On Tuesday night, however, appellant went to the home of Hughes and then stated that he had not told the truth about the killing of the animal in the prior conversation, but admitted that he and Less Holder had killed it, and said if Holder would not pay for it he (appellant) would if he (Hughes) would stop the prosecution. In this same conversation appellant told Hughes he thought Holder had bought the yearling, but gave no reason for so thinking. Appellant admitted in this conversation that he knew the animal they had killed was the one he had traded to the witness. It was in proof that B. Brown, Raymond McCullor, Less Holder, Welton Kelly and appellant were all present at the time the animal was killed. Holder had employed Brown and Kelly to assist in killing the animal and was to pay them one dollar each for their services. Holder secured the implements with which to do this killing and the knives necessary to dress the animal. He, with Brown and Kelly proceeded in the di-

rection of the Kelly place; they met appellant and Raymond McCullor. Appellant called Holder off from the others and had a private conversation with him. Brown and others of the party heard Holder ask appellant if he had the yearling "penned," and heard appellant reply, "Yes." After the animal was killed some of the witnesses claimed that Holder and Raymond McCullor took the head and entrails off somewhere south of the house, at which time appellant was quartering the beef. Brown and Kelly disclaimed knowledge that the animal was stolen at the time it was killed and claimed to have been assisting in the butchering of the animal at the request of Holder. After the State had developed the foregoing testimony appellant offered as a witness one McKnight who claimed to have seen Holder penning the yearling in question on the Kelly place. It was in evidence from the witness Tew that he had seen Holder driving a yearling in the Hughes pasture about the time the animal is alleged to have been killed. It was shown by the State on cross-examination of these two witnesses that they were each under indictment for felonies themselves. By one Brice appellant introduced evidence to the effect that on Sunday night after the killing of the animal on Friday he saw Holder going down through the old Kelly field on horse back with something in a sack which witness claims to have seen him put in a pool of water Appellant himself did not testify. The State placed upon the witness stand in rebuttal Raymond McCullor who testified that on the Friday afternoon before the animal was killed about dark of that day appellant got him (witness) to go with him and help pen the animal in question; that they afterwards met Holder and the other parties and went back and killed and butchered the animal. This witness was staying at appellant's at the time. He says that on Sunday afternoon he and appellant got the head of the yearling and threw it in the pool of water where it was found. One witness testified that Holder took the hide off some distance from where the animal was killed, saying it was not fit to sell as it had been cut up too much in skinning. This hide was found in a branch somewhere near the place the animal was butchered. The deputy sheriff testified that after having found the hide he talked to appellant about the matter and told him he (appellant) was getting in an awful close place and that somebody had "to do some coughing up or go to the penitentiary," and that appellant replied to him that he had "lied like a dog" to Hughes when the latter had asked him about the yearling, and that appellant then told witness about the whole transaction about them killing it.

Appellant excepted to the State proving by W. H. Hughes (Bill No. 2) that after he had found the head of the stolen animal he asked appellant if he knew anything about it being killed which appellant denied. In view of the evidence showing this statement to have been false we are unable to see any objection to proving it as a criminative fact against accused. He was not under arrest or in jail at the time of the conversation.

Appellant sought a continuance, among others, for one Lewis Sanders, by whom he expected to prove that Holder had told him (Lewis) that he (Holder) was going to get into trouble over the yearling he had killed, and if he did he was going to put it off on appellant. He tendered substantially the same proof on the trial through the witnesses Price and Carpenter. (Bills 5 and 6.) The evidence was excluded on objection by the State, and we think properly so. The evidence of Sanders would for the same reason have been inadmissible. Greenwood v. State, 84 Texas Crim. Rep., 548, 208 S. W. Rep., 662. We quote from Walsh v. State, 85 Texas Crim. Rep., 208, 211 S. W. Rep., 241.

"It is settled that one accused of crime may show that another person committed the offense with which he is charged, where the guilt of such other person would be consistent with the innocence of the accused. But this proof must be by competent evidence. Dubose v. State, 10 Texas Crim. App., 230. In the case of Blocker v. State, 55 Texas Crim. Rep., 30, this court qualified the general rule excluding the admission of the third party as hearsay, and holding that in a case where the prosecution was supported by circumstantial evidence alone that in connection with circumstances tending to show that another and not the accused had motive and opportunity to commit the offense, the declaration of such third person that he had committed it should be received as one of the circumstances in favor of the accused on trial."

Walsh offered the statement of one Miller who had been condemned to death for the same offense with which Walsh was on trial. We quote further from the opinion in the Walsh case:

"Miller being charged by indictment with the same offense, was by virtue of the express provisions of Article 791 of our C. C. P., not a competent witness for appellant and was disqualified further under Article 788 by his conviction of a felony. If, therefore, appellant had offered him as a witness to prove that while he, appellant, was present at the time the homicide took place, that no part was taken in it by him, Miller's testimony would have been excluded on objection upon either or both of the grounds stated. If the contention of appellant on the phase of the case we are discussing is sound, it would illustrate what seems to the writer an anomalous condition of the rules of evidence in this State, because while under express statutes he could not put Miller on the witness stand and prove by him under oath any fact exculpating appellant, he could prove an exculpating declaration made by Miller, not under oath, and out of court, to a third party, by introducing the third party as a witness and making proof that Miller had made the statements to him."

In the instant case the State's evidence indicated that appellant and Holder acted together in the theft. It was not a case depending wholly upon circumstantial evidence, and is therefore not brought

within the exception stated in Blocker v. State, 55 Texas Crim. Rep., 30. Holder having been indicted for the same offense brings this case clearly within the principle announced in Walsh's case (*supra*).

Appellant's application for continuance was based on the absence of three witnesses, Lewis Sanders, Raymond McCullor and Pleas Mc-Cullor. The proposed testimony of Sanders has already been discussed. Raymond McCullor was present at the trial. He was not used by appellant but by the State. The application states that Pleas McCullor would testify "that he saw the said Less Holder after the yearling in the pasture known as the Hughes pasture, and that he was driving the yearling toward the Kelly house, and the witness asked the said Holder where he got the yearling and that he replied that he bought it and that he intended to kill it and sell the beef." It will be observed that it is not made to appear when this transaction occurred with reference to the time of the killing of the stolen animal; neither does it appear that the animal which it is claimed Pleas McCullor saw Holder driving was the animal afterwards killed, the theft of which was the subject of the investigation in this case. It is not shown that Pleas McCullor was acquainted with the stolen animal, or could identify it as the one it is claimed he saw Holder driving. If the statement claimed to have been made by Holder to Pleas McCullor would be admissible as an exception to the rule discussed relative to the proposed testimony of Sanders, Price and Carpenter as being *res gestae* of the act of said Holder in driving an animal, still before the action of the court in overruling the application for continuance on account of the absence of Pleas McCullor could be held erroneous the proposed testimony must be shown to have been relative to Holder's conduct with reference to the identical animal alleged to have been stolen, and at a time when the circumstances would have some bearing upon the matter under investigation. In view of the development of the evidence upon the trial, and the uncertain character of the proposed testimony as shown by the application we are not inclined to hold that the action of the court in refusing the continuance for this witness to have been error.

No error is presented by bill of exception number three. Brown had testified as a State's witness, but had not been asked about any conversation with Holder. On cross-examination it was elicited from him that Holder had told witness he had bought a yearling, and wanted witness to help him kill it. The State then developed that in the same conversation Holder said he bought the yearling from appellant. Under the express provision of Article 811, C. C. P., the State had the right to develop the whole conversation on the same subject. (See authorities collated under this Article in 2d Vol. Vernon's Crim. Statutes.) Appellant complains (Bill No. 4) because the State was permitted to ask the witness Kelly, "When did you hear about that yearling being stolen?" the objection being that this could not be binding on appel-

lant. The witness answered, "I think that it was either Monday or Tuesday after the yearling had been stolen on Friday." The evidence being undisputed that the animal had been stolen, and killed on Friday, and the meat peddled out by Holder on Saturday, we think the question and answer could not be so harmful to appellant as to demand a reversal. There appeared to be no question about the theft. The disputed issue was appellant's connection therewith.

Appellant did not testify. Defensive testimony was offered through other witnesses. In argument the district attorney said:

"The defense of the defendant was all a fabrication made especially for that occasion, and that defendant furnished the meat, and that Less Holder peddled it out, and they went into partnership."

Exception was taken to the argument as being an allusion to appellant's failure to testify. We are unable to conceive how it can be distorted into such a construction. The explanation of the trial judge that both appellant and Holder were indicted as principals, and that the argument was a reasonable deduction from the evidence appears to be both appropriate and pertinent.

The judgment is affirmed.

*Affirmed.*