(No. 32310.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE LETTRICH, Plaintiff in Error.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

FRANCIS T. McCURRIE, ROBERT E. HARRINGTON, and IRWIN D. BLOCH, all of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. Justice Maxwell delivered the opinion of the court:

Plaintiff in error, George Lettrich, hereinafter called defendant, comes to this court by writ of error to review his conviction and death sentence by the criminal court of Cook County for the crime of murder.

On the morning of December 18, 1948, the body of one Roberta Rinearson, a girl of the age of ten years, was found lying in a ditch on the east side of County Line Road, a north and south road dividing Cook County on the east and Du Page County on the west. She was lying on her left side with a green coat spread out over her which was held up by the grass and weeds. Both her shoes were missing and a pair of panties was stuck into her mouth. A large white man's handkerchief bearing initial "P" was found near the body. Subsequent medical examination revealed that there were bruises behind each of her ears, on the left jaw, and scratches on either side of the neck; a tear in the vagina and hemorrhages on the tissues beneath the vagina lining; congestion of the brain, the organs of the neck, mouth and trunk. The examining physician testified that she came to her death as a result of asphyxiation, the result of a foreign body in the mouth and external violence applied to the neck.

Nearly eighteen months after the body was found, on August 10, 1950, about 1:00 P.M., the defendant was arrested while he was sitting on a bench waiting for a bus at the entrance of Cermak Park in the city of Chicago. From the time of his arrest at 1:00 P.M. on Thursday, until 1:15 A.M. on Sunday he was held incommunicado, in the presence of various police officers at the Lyons, McCook, and a Chicago police station. During this period he was questioned many times by various officials but always denied any knowledge of the murder of the Rinearson girl. About 4:30 P.M. on Saturday, August 12, he was taken to the Chicago Eleventh and State Street police station and

advised by officer Walsh that he would have to submit to a lie detector test. This officer outlined the crime and then asked defendant a series of questions.

The defendant testified that the test was given to him four times and each time before the questions were asked the officer related the details of the crime to him; that the officer became angry, "made passes at him," threatened him and told him to admit the crime and get it over with; that he became frightened and finally said, "All right, I did it;" the officer then again related the details to him for the fifth time before taking a written statement from him at 1:15 A.M. on August 13. At 3:15 A.M. he was questioned by the State's Attorney in the presence of several witnesses and at 5:00 A.M. they took him to the scene to go through a re-enactment of the crime in the presence of approximately 150 spectators, reporters, photographers and police officers.

The defendant made and signed two separate confessions which were, after a hearing before the court on their admissibility, admitted into evidence as People's exhibits 8 and 9. Defendant contends they were extorted by violence, duress and unlawful confinement and were not made voluntarily; that all witnesses to the procuring, making and signing of said confessions were not produced on the preliminary hearing on their admissibility, nor were those witnesses produced on the hearing in the presence of the jury; and that the force and duress used to obtain the first confession continued to exist and influenced the making of the second statement.

The defendant testified that he was struck several times by police officers as he was taken to and from his cell, that on two occasions one of the officers said they would "get it out of him if we have to keep him up all night or knock it out of him;" and that the officer who gave him the lie detector tests struck at him, threatened him and told him "he would knock my head through the wall and go on the

other side and make mincemeat out of it." All these charges were denied by the accused officers, and a physical examination of defendant made by a physician on August 13 revealed no bruises or discolorations on defendant's body.

Although there may be evidence of threats or promises made to induce the making of a confession, if there are sufficient facts and circumstances proved to show that the confession was voluntarily made there is no abuse of judicial discretion in allowing it to be presented to the jury. (*Bartley* v. *People,* 156 Ill. 234.) The decision of the trial court on the question whether a confession is voluntarily made will not be disturbed unless it is manifestly against the weight of the evidence. (*People* v. *Albers,* 360 Ill. 73.) The court is not required to be convinced beyond a reasonable doubt that the confession was voluntarily made. (*People* v. *Borrelli,* 392 Ill. 481.) We have carefully examined all the evidence in regard to the manner and method of procuring the defendant's confession here and although we do not approve the repeated and persistent questioning by police officers of a person in their custody such as was here employed, we do not believe the decision of the trial court that the confessions were voluntarily made was manifestly against the weight of the evidence.

But this by no means determines that this defendant has had a fair and impartial trial under all the circumstances of this case. We are here confronted with the prosecution of an individual for a crime where there is not a scintilla of evidence to connect him with that crime except his repudiated confession, taken by police officials after he has been held incommunicado for more than sixty hours, had been repeatedly questioned by the police, subjected to several lie detector tests, and finally questioned continuously for a period of eight hours, which admittedly culminated in his "emotional upset" and subsequent statements, now repudiated, which are, in some very material details, unquestionably at variance with known facts and

circumstances of the offense. Where there has been a conviction and sentence of death on that confession alone, justice and the protection and preservation of the rights of the innocent inexorably demand that this court scrutinize the record with utmost care and caution to make sure that the defendant has had every opportunity to controvert the State's proof that the confession was voluntarily made, to show that it was not true, or that he did not commit the offense. Where such confession stands uncorroborated, it should clearly appear that it was voluntarily made, that it is true, and that the confession is fairly and justly presented to the court and jury so that the conviction is not tainted by depriving the defendant of an opportunity to present his case or by any prejudice induced in the minds of the jurors by overzealous prosecutors. We are not unmindful of the atrocious nature of the offense charged, nor of the need and justification for swift, sure and adequate punishment, but such considerations must not cause us to ignore, to relax, or even to hesitate in our duty to protect and preserve the rights, privileges and liberties of every citizen, innocent and guilty alike.

After careful study of this record we are not satisfied that this defendant's conviction rests on his confession, fairly and justly presented to the jury, that he was given every opportunity to present his case, or that the jurors' minds were free from any prejudice induced by the prosecutors. We deem it unnecessary to enumerate or discuss all the alleged errors assigned by the defendant but shall restrict this opinion to those which, in our opinion, unquestionably require a reversal of this conviction.

Defendant contends that the court erred in limiting and restricting his cross-examination of the witness Walsh, to whom his first statement was made. We think this complaint justified. Defendant's counsel asked the witness to state all the questions asked of defendant while the polygraph machine was being used and the witness stated he

could not do that without examining his records which would take fifteen minutes. The court refused to allow the witness to do this. We think, under the circumstances, the court did unduly restrict the defendant's cross-examination of this witness. This was the witness upon whom the entire case rested. His questioning led to defendant's "emotional upset" and his breakdown. In view of defendant's contention that it was this incessant questioning, threats and fear which caused him to make the statement, he should have been permitted to show all the circumstances surrounding his questioning by this witness, including the nature and extent of the questioning. The scales of justice will not balance fifteen minutes of the court's time against the life of the defendant.

The defendant further contends that the court erred in its refusal to admit into evidence the testimony of the director of the behavior clinic of Cook County to show that another person had confessed this same murder to him. The general rule, supported by the great weight of authority, is that extrajudicial declarations of a third party, not made under oath, that he committed the crime, are purely hearsay, and even though they are declarations against interest, are inadmissible. The practicality of this rule is obvious. General admission of such statements could seriously handicap the administration of justice in tempting everyone accused of crime to introduce perjured testimony that a third party, then deceased or beyond the jurisdiction of the court, had declared that he, and not the accused, had committed the crime. The rule is sound and should not be departed from except in cases where it is obvious that justice demands a departure. But it would be absurd, and shocking to all sense of justice, to indiscriminately apply such a rule to prevent one accused of a crime from showing that another person was the real culprit merely because that other person was deceased, insane or outside the jurisdiction of the court.

We think under the special circumstances of the instant case justice demands a departure from the rule. The State is here relying upon a confession, which the defendant alleges was procured by duress and fear. That confession does not coincide with many of the known facts and cannot be entirely true. Any suspicion that the offered declarations of the third party in this case is testimony induced by the accused will not even be considered. Where the State is relying solely upon the repudiated confession of the defendant, and that confession in material respects does not conform to the known facts, it seems that justice requires that the jury consider every circumstance which reflects upon the reliability of that confession, and a confession of a third person that he perpetrated the offense is such a circumstance.

Defendant's statement identified as People's exhibit 8 was attested by Edward D. Walsh, John T. O'Malley, Ralph E. White, Walter T. Griffin and John Doyle, all police officers. Griffin and Doyle did not testify before the court at the preliminary hearing nor before the jury. The statement identified as People's exhibit 9 was attested by State's Attorney John Boyle, assistants John Long and Walter Maurovich, and four other witnesses, none of whom were called to testify to the circumstances surrounding the taking of that statement. Joseph Tournier, shorthand reporter for the State's Attorney's office, testified that when People's exhibit 9 was taken by him he, the State's Attorney, his two assistants, chief of Police Ralph E. White, and the defendant were the only persons present, yet that statement bears the signatures of four other witnesses. The assistant State's Attorney, after reading People's exhibit 9 to the jury, specifically called its attention to the fact that these four unidentified witnesses had attested that statement and read their names and addresses. This we regard as an inexcusable and gross error. Calling the jury's attention to the attestation of these witnesses,

giving their names and addresses, was tantamount to those witnesses testifying that they were present when the statement was made and that the defendant voluntarily made all the statements therein.

The State failed to call all the parties who signed his statements as witnesses, and the defendant contends that there is an absolute duty on the trial judge, when it appears a confession may have been extorted by force or duress, to refuse to admit the confession into evidence until every witness to the taking of the statement has been called to testify. (*People* v. *Rogers*, 303 Ill. 578; *People* v. *Holick*, 337 Ill. 333; *People* v. *Sloss*, 412 Ill. 61.) The State contends that where all the police officers and inquisitors whom the accused charges in his testimony with the exercise of physical violence and threats take the stand and testify they did not do the things charged and that nothing of the kind occurred in their presence, the legal requirements appertaining to the admissibility of a confession are complied with. (*People* v. *Guido*, 321 Ill. 397; *People* v. *Price*, 371 Ill. 137; *People* v. *Jankowski*, 391 Ill. 298.) The State's contention is untenable. The effect of such a ruling would be that if six officers participated in the questioning and taking of a defendant's statement, and defendant testified that only one of them beat him, then the State would be required to call only the one witness, and that witness the one with the most incentive to deny defendant's accusation. The State determines who signs a confession as a witness and when they elect to have any person sign as a witness to the taking of a statement, it does not seem too burdensome to require them to call those witnesses to testify or explain their absence. We think our latest expression upon this requirement as set forth in *People* v. *Sloss*, 412 Ill. 61, is sound.

Defendant contends that the assistant State's Attorneys made inflammatory and prejudicial remarks to the jury in their arguments. These remarks included statements that

the eyes of the people of the State were upon this jury; that this was a proper case for the chair and that the State's Attorney knew it, and that other jurors had inflicted the death penalty before. Such remarks are clearly incompetent and we think prejudicial in this case. The jury must try the case according to the law of the evidence, and what the people of the State may want, what other jurors have done before, and what the State's Attorney thinks about the guilt of the defendant are clearly irrelevant and incompetent. *People* v. *Dabney*, 315 Ill. 320.

The totality of these errors compel us to the conclusion that this defendant has not had the fair and impartial trial which is the inherent right of every person accused of a crime. The judgment and sentence of the criminal court of Cook County are reversed and this cause is remanded to that court for a new trial.

*Reversed and remanded.*