**UNITED STATES of America,**
**Appellee,**

v.

**Ronald W. RANCIGLIO, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Donald Lee CORZINE and Leo Lee Raia,**
**Appellants.**

**Nos. 19846, 19922.**

United States Court of Appeals,
Eighth Circuit.

July 22, 1970.

Lawrence O. Willbrand, St. Louis, Mo., for appellants, and filed brief.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee, and filed brief; Daniel Bartlett, Jr., U. S. Atty., was on the brief with Mr. Newton.

Before VAN OOSTERHOUT, ME-HAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

Donald Lee Corzine, Leo Lee Raia and Ronald William Ranciglio appeal their conviction in the United States District Court for the Eastern District of Missouri on charges of unlawful possession of merchandise stolen from an interstate shipment. 18 U.S.C.A. § 659.[1] Defendants assert that they were denied the right of counsel at their pretrial lineup and that the in-court identifications were tainted by the therefore impermissible lineup. We affirm.

These charges relate to the possession of packages taken from a trailer which had disappeared from the Consolidated Freightways lot in St. Louis, Missouri, on April 10, 1969. Two witnesses, Roy Cavaness and Dennis Flynn, made an in-court identification of the defendants as the persons they had observed unloading a Consolidated Freightways trailer parked in an alley the afternoon of April 10. These courtroom identifications came, however, after pretrial identifications at a lineup. The procedures which were used at the lineup admittedly violated constitutional standards set forth in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), in that the defendants were not informed that they had a right to have counsel present at the lineup.

The government argues that no references to the line-up were made at the trial except in defense counsel's cross-examinations of the government witnesses, and therefore no constitutional error was committed at trial. Cf. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). However, the Supreme Court recognized in

---

1. A fourth defendant, Joseph Audrey Hastings, was also convicted but has not appealed.

United States v. Wade, supra, that if the defendant's conviction rests upon a courtroom identification which was based upon an impermissible pretrial identification, it cannot stand. Thus, the government has the burden in this case of establishing by clear and convincing evidence that the in-court identifications were not based upon the lineup identifications. The proper standard, taken from Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963), and set out in United States v. Wade, supra, 388 U.S. at 241, 87 S.Ct. at 1939, is "Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." [2]

▬▬ Upon defense counsel's motion to suppress any identification of the defendants by witnesses Cavaness and Flynn, the trial court, out of the hearing and presence of the jury, conducted a hearing as required in *Wade* and subsequently overruled the motion. Although the trial court did not specify the grounds upon which he overruled the defendants' motion,[3] upon examination of the entire trial record we are satisfied that the in-court identifications had independent origins and were not influenced by the tainted lineup.

All four defendants were arrested during the late afternoon of April 10, 1969, near a garage belonging to Roy Cavaness' parents, located at 5131 Shaw Street in St. Louis, Missouri. Roy Cavaness, a 15 year old school boy, testified that earlier in the afternoon of April 10, while he was working in that garage located on an alley in back of his parents' home, he had been approached by a man, later identified as Leo Raia,

2. Several factors which might be considered in making such a determination are set forth in *Wade*.

"Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." *Id.* at 241, 87 S.Ct. at 1940.

3. After their arrest the defendants were informed of their rights and at the time of subsequent questioning (prior to the lineup) that they were entitled to have counsel present at this questioning. The defendants each waived their right to counsel but at the same time refused to be interrogated. Although this waiver occurred only a few hours before the lineup was held, it is undisputed that defendants were not told they were to be placed in a lineup or that they had a right to have counsel present at the lineup. At the hearing on the motion to suppress the trial court indicated that the defendants had been informed of their right to counsel prior to the lineup. It may have been upon this basis that defendants' motion to suppress the in-court identifications was overruled. However, on appeal the government concedes that under *Wade* the police had the added duty of informing the defendants of their additional right to have counsel present at the lineup.

Even if the trial court erroneously appraised the lineup proceedings as a due process question (cf. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)) rather than as a right to counsel issue, a *per se* reversal of the convictions is not required. Where defendants are not informed of their right to have counsel present at the lineup, and where the evidence of the lineup identification itself has not been offered, the in-court identifications may still be admissible. Under these circumstances the government must show by clear and convincing proof that identification originated from the witness' out-of-court observations rather than from the tainted lineup. United States v. Wade, supra, 388 U.S. at 240, 87 S.Ct. 1926. And where the trial court has not specified the basis of his ruling in allowing into evidence the in-court identification, this court may review the entire record, if otherwise sufficently adequate to make this determination. See Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306, 1307 n. 10 (1969).

who asked him if he would like to "make a fast buck." He further related, that after accepting the offer, Raia directed a tractor trailer to be brought into the alley and parked next to the garage. Thereafter, Cavaness and four others (allegedly the defendants) formed a human chain to unload the contents of the trailer into the garage. This process took approximately one hour. In court, as well as at the lineup, Cavaness identified Raia and Ronald Ranciglio as the persons on either side of him during this unloading operation. He recalled in detail the clothing each of the men wore. He testified that he was not able to identify the two persons who had remained in the trailer during the unloading. However, the witness did identify the defendant Hastings as one of the men who earlier had gotten out of the trailer. The only time Cavaness was able to identify Corzine was when Corzine arrived at the garage later the same afternoon with the other defendants in the Hastings car.

The other eye witness, Dennis Flynn, age 20, was employed as a shipping and receiving clerk at the Fairway Department Store which had its rear entrance in the same alley as the Cavaness garage. Flynn testified that on April 10, 1969, upon hearing a truck drive into the alley, he left the Fairway Store by the rear door to see if a delivery had arrived. Noting that the trailer belonged to Consolidated Freightways, he went back to the store to determine whether a shipment from them was expected. Finding no bill of lading from Consolidated, he re-entered the alley and observed an individual walking from the end of the alley to the trailer. This individual, whom Flynn identified as Donald Corzine, passed within ten to twelve feet and continued to look back after he had passed him. He recalled looking directly at Corzine for some clarification as to the presence of the trailer. He

also testified that he observed another person, whom he identified as Raia, unloading packages from the truck. He estimated that he observed this activity around the truck for approximately ten minutes.

Defendants have argued that Flynn's ability to identify Corzine and Raia was based upon *both* his original observations and the lineup. However, the record clarifies Flynn's full response to cross-examination by defense counsel:

"Q. Did you have a good look at them?

"A. Yes.

"Q. Is your identification today based on the lineup or when you saw them originally on the afternoon?

"A. Both. Well, I mean it—*well, I saw them at the lineup too.*

"Q. *I know. But can you identify them now as a result of having seen them originally on the street?*

"A. *Yes."* (Emphasis ours.)

In our judgment the record clearly demonstrates that both witnesses had a substantial opportunity to observe and scrutinize from a position of close proximity the persons they identified as the defendants. Cavaness, in working side by side with two of the defendants for an hour, had an ample independent basis for making an identification. Flynn's observations, while not as extensive as those of Cavaness, cannot be described as mere fleeting observations. Since three of the defendants were arrested in the late afternoon of April 10 in the alley behind the Cavaness garage and one earlier that afternoon in the Cavaness yard,[4] there was no need or opportunity for the witnesses to give a description of the defendants to the police prior to the arrests. *The lineup proceeded that same evening.* There were no abortive failures by the two witnesses to identify the defendants, and no prior incorrect

---

4. Cavaness had told them that they must have the packages out of the garage by 4:30 when his parents would come home. He had however called his parents immediately after the defendants left and they had called the police. The defendants were arrested as they returned to the garage.

identifications of other persons. The lineup, itself, included a fifth unrelated person who was not identified by either witness. Furthermore, neither witness claimed he could identify all of the defendants. The witnesses did, therefore, demonstrate their ability to discriminate in their identifications. Thus, given their excellent opportunities for observation of the defendants, we feel the testimony of both witnesses supports the conclusion that the in-court identifications had independent origins and were admissible. Hawkins v. United States, supra; United States v. Broadhead, 413 F.2d 1351 (7 Cir. 1969); Frazier v. United States, 136 U.S.App.D.C. 180, 419 F.2d 1161 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968); United States ex rel. Geralds v. Deegan, 292 F.Supp. 968 (S.D.N.Y.1968).

Judgment affirmed.