**UNITED STATES of America**
**Appellee,**

**v.**

**James C. GOODLOW, Appellant.**

**UNITED STATES of America,**
**Appellee,**

**v.**

**Alfred GLASS, Appellant.**

**Nos. 73–1737 and 73–1738.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1974.

Decided Aug. 5, 1974.

Rehearing and Rehearing En Banc
Denied Sept. 17, 1974.

LAY, Circuit Judge.

Defendants James C. Goodlow and Alfred Glass appeal their respective convictions on charges of breaking the seal of an interstate trailer in violation of 18 U.S.C. § 2117. Defendants urge several separate grounds of error. We find that the only meritorious ground of error is raised by the defendant Goodlow. We reverse his conviction and remand for a new trial. We affirm the conviction of the defendant Glass.

On February 6, 1973, St. Louis police were notified that two men had been observed breaking the seals on three interstate trailers. The chief government witness, Doyle Payne, called the police and gave them a description of the two men and their automobile, along with the car's license number. The next day, police officers located the car described by Payne and arrested the three black male occupants. The men arrested were Major Bogan, James Goodlow and Alfred Glass. The car belonged to Joyce Bogan, the sister of Major Bogan. The three men were taken to the police station where Payne was allowed to view them. He identified Goodlow and Glass as the two individuals he had observed the day before, whereupon Major Bogan was released.[1]

The identification of the defendants by Payne was one of the main areas of controversy at trial. Payne testified that he was in the trucking business and that on the afternoon of February 6, 1973, while at his place of business, he had observed two black males drive up to the vacant lot across the street, get out of their car, and open the door on the back of one of the trailer units parked on the lot. Payne said he saw

James D. Keast, St. Louis, Mo., for appellant, Goodlow.

Anthony L. Anderson, St. Louis, Mo., for appellant, Glass.

William Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

---

1. Both defendants challenge the arrest "showup" where Glass, Goodlow and Major Bogan were shown at the police station as a group of three to the witness Payne, who identified Goodlow and Glass at that time. Although the showup procedure is not to be condoned (*cf.* Stoval v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)), nevertheless we cannot say that by itself the showup was a denial of due process. *Cf.* Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Furthermore, Payne's direct testimony reflects that his identification was based on his observation of how the men appeared (clothing, etc.) at the time of the theft and not as they appeared at the police station the next day. *Cf.* United States v. Ranciglio, 429 F.2d 228 (8th Cir. 1970).

the taller of the two men take a small box from the trailer and give it to the shorter man who in turn placed the box in their car. He then observed one of the trailer company's employees approaching the back of the trailer, whereupon the two men ran to the car and drove off. Payne then called the police. He said he was 100 yards away when he made his first observation. He later moved closer to the area and eventually got within 50 yards of the men.

█ The record reveals several discrepancies between the description Payne gave to the officers on the day of the incident, his later statements to defense counsel, and his description of the men at trial. The accuracy of his identification was, of course, a question for the jury.

An employee of the express company, Garland Collier, told officers on the day of the theft that he had walked around the trailer and surprised the men. He testified that he had approached to within 12 to 15 feet of the men before they fled. He could not describe either man to the police, however, nor could he identify the defendants at trial.

█ Defendant Glass alleges 17 grounds of error. Since this case must be retried as to Goodlow, we note here that there is no merit to Glass' claim of racial discrimination in the jury selection process. There is no evidence in this case of any systematic plan of racial exclusion by either the District Court Clerk's office or the United States Attorney's office. Cf. United States v. Whitley, 491 F.2d 1248 (8th Cir. 1974); Little v. United States, 490 F.2d 686 (8th Cir. 1974).

In addition to his allegations of discrimination in the grand and petit jury selection, defendant Glass makes 16 other assignments of error which he groups under three general classifications: (a) due process violations, (b) violations of his Sixth Amendment rights, and (c) violations of procedural due process. We have carefully reviewed each of these assignments of error and find them to be without merit. This court has previously passed on many of the specific questions raised in other cases. In those instances in which we have not, we are satisfied after an examination of the record and existing case law that no error prejudicial to the defendant Glass occurred.

Defendant Goodlow, on the other hand, urges only four grounds for reversal. We find one ground, that the trial court excluded certain testimony as hearsay, to be prejudicial error.

At trial, Barbara Goodlow (defendant Goodlow's wife), Eugene King and defendant Goodlow offered to testify that on three separate occasions shortly after the defendants had been identified at the police station, Major Bogan (who disappeared before trial and did not respond to an issued subpoena) told each of them that he was "good for the crime" and that defendant Goodlow was not "good for it." The statements allegedly made by Bogan were objected to as hearsay and excluded by the trial court.

██ It is urged on appeal that the trial court erred in failing to admit this evidence as a declaration against penal interest. We note at the outset of our discussion that Major Bogan's statement that the defendant Goodlow was not "good for it" does not amount to a declaration against penal interest. Such a statement, standing alone, is only exculpatory as to Goodlow and, as such, constitutes inadmissible hearsay. Cf. United States v. Seyfried, 435 F.2d 696 (7th Cir. 1970), cert. denied, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971); Mason v. United States, 257 F.2d 359 (10th Cir.), cert. denied, 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69 (1958). However, since the statements were allegedly given at the same time and within the same general context of Major Bogan's admission of guilt, their overall exclusion or admission should be considered as one. The proposed Federal Rules of Evidence would clearly admit Major Bogan's statement, which was against his penal

interest.[2] These rules were not controlling at the time of the defendants' trial nor are they yet in effect. Nevertheless, we believe that the proposed rule which recognizes the admissibility of declarations against penal interest simply reflects the overwhelming weight of authority on that question. *See, e. g.,* United States v. Seyfried, 435 F.2d 696 (7th Cir.), cert. denied, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971) (dicta); Mason v. United States, 257 F.2d 359 (10th Cir.), cert. denied, 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69 (1958) (dicta); State v. Larsen, 91 Idaho 42, 415 P.2d 685, 691–692 (1966); People v. Spriggs, 60 Cal.2d 868, 36 Cal. Rptr. 841, 389 P.2d 377 (1964) (en banc); People v. Lettrich, 413 Ill. 172, 108 N.E.2d 488, 492 (1952); Osborne v. Purdome, 250 S.W.2d 159, 163 (Mo. 1952) (en banc); Newberry v. Commonwealth, 191 Va. 445, 61 S.E.2d 318, 325–326 (1950); In re Forsythe's Estate, 221 Minn. 303, 22 N.W.2d 19, 25 n. 3 (1946); Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 289–290 (1945); Hines v. Commonwealth, 136 Va. 728, 117 S.E. 843, 846–850 (1923); Blocker v. State, 55 Tex.Cr. 30, 114 S.W. 814 (1908); Moore v. Metropolitan Life Ins. Co., 237 S.W.2d 210 (Mo.App.1951); McCormick, Evidence § 278 (2d ed. 1972); 5 Wigmore, Evidence §§ 1476, 1477 (3d ed. 1940).

The only Supreme Court case to consider the question, Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L. Ed. 820 (1913) (Holmes, J., dissenting), held that the hearsay exception is limited to interests of a pecuniary or proprietary nature. *Accord,* Scolari v. United States, 406 F.2d 563 (9th Cir), cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969).[3] Recently, however, the Supreme Court has observed that *Donnelly* has been widely criticized.[4] *See* Chambers v. Mississip-

---

2. Rule 804(b)(4) provides:

> (4) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, *or so far tended to subject him to civil or criminal liability* or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. This exception does not include a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused. (Emphasis added).

Proposed Federal Rules of Evidence, Rule 804(b)(4), 51 F.R.D. 315, 438–439 (1971).

The Committee on the Judiciary of the House of Representatives, in its Report on the Federal Rules of Evidence, H.R.Rep.No. 93–650, 93rd Cong., 1st Sess. 16, 17 (1973), recommended that the proposed rule be amended to read as follows:

> (3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to criminal liability, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to crimi-

nal liability and offered to exculpate the accused is not admissible *unless corroborating circumstances clearly indicate the trustworthiness of the statement.* A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception. (Emphasis added).

The House of Representatives adopted the bill with this language intact. H.R. 5463, 93d Cong., 2d Sess. 36–37 (1974). The bill has not passed the Senate.

3. Where the statement against penal interest lacks inherent trustworthiness, its admissibility has likewise been rejected. *See* United States v. Sheard, 154 U.S.App.D.C. 9, 473 F.2d 139 (1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973); United States v. Alexander, 139 U.S.App.D.C. 163, 430 F.2d 904 (1970).

4. Professor Wigmore, in addressing the exclusion of declarations against penal interest in *Donnelly*, observes:

> But, furthermore, it cannot be justified on grounds of policy. The only plausible reason of policy that has ever been advanced for such a limitation is the possibility of procuring fabricated testimony to such an admission if oral. This is the ancient rusty weapon that has always been brandished to oppose any reform in the rules of Evidence, viz., the argument of

pi, 410 U.S. 284, 299, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); United States v. Harris, 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In *Chambers*, the Court reserved decision on whether, under some circumstances, the *Donnelly* rule might serve some valid purpose by excluding untrustworthy testimony. It held, however, that under the facts in *Chambers* it was error to exclude the declarations against penal interest. The Court observed that the statements "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Chambers, supra*, 410 U.S. at 300, 93 S.Ct. at 1048.

 In the present case, as in *Chambers*, there are corroborative circumstances giving an aura of trustworthiness to the statements.[5] Here two witnesses in addition to the defendant Goodlow offered to testify that Major Bogan had made the statements. The witnesses each specified the time and place at which the statements were made and identified the persons who were present. To reason that the credibility of these witnesses is such that their testimony would not be believed attempts to substitute judicial discretion in an area where factfinding prerogatives control. There are also other factors tending to corroborate the fact that an admission was made. It is undisputed that the car involved in the crime belonged to Major Bogan's sister. Officer Ubben testified that Bogan was a known interstate car-

rier thief. Finally, several discrepancies in Doyle Payne's identification of the defendant make it at least plausible that Bogan, rather than Goodlow, was one of the two men seen by Payne. In view of these facts, we believe that circumstances which provided considerable assurance of reliability were present and that the district court erred in excluding the testimony in question.

 Since we have found error in the exclusion of evidence, and because we cannot say beyond a reasonable doubt that the excluded evidence would not have changed the jury's verdict, particularly in view of the overall record relating to the identification evidence, we reverse the conviction of the defendant Goodlow and remand for a new trial. This is not to say a different verdict or result will or should be reached. We simply cannot say beyond a reasonable doubt that the result would have been the same had the evidence been admitted. *See* Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. Stabler, 490 F.2d 345 (8th Cir. 1974).

Reversed and remanded as to defendant Goodlow; judgment affirmed as to defendant Glass.

ROSS, Circuit Judge (dissenting).

I do not disagree with the majority's discussion of the declaration against penal interest exception to the hearsay rule. It properly notes the general

---

danger of abuse. This would be a good argument against admitting any witnesses at all, for it is notorious that some witnesses will lie and that it is difficult to avoid being deceived by their lies. The truth is that any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing for an innocent.

The only practical consequences of this unreasoning limitation are shocking to the sense of justice; for, in its commonest application, it requires, in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has

avowed himself to be the true culprit. The absurdity and wrong of rejecting indiscriminately all such evidence is patent. 5 Wigmore, Evidence § 1477 at 288–89 (3d ed. 1940).

5. In *Chambers* the declarant was present and available for cross-examination. In the present case, Major Bogan was unavailable. The general rule allowing the admission of statements against penal interest recognizes as a prerequisite the unavailability of the declarant. *See, e. g.*, Proposed Federal Rules of Evidence, Rule 804(b)(4), Advisory Committee Comment, 51 F.R.D. 315, 439–445 (1971).

trend toward applying that exception and correctly indicates that the Supreme Court in Chambers v. Mississippi, 410 U.S. 284, 293–302, 93 S.Ct. 1038, 35 L. Ed.2d 297 (1973), and the House of Representatives in its version of the proposed Federal Rules of Evidence, H. R. 5463, 93d Cong., 2d Sess. 36–37 (1974), have taken a cautious approach to adopting the penal interest exception. Both have required that for the exception to apply there must be corroborating circumstances indicating clearly that the proffered hearsay testimony is trustworthy. The majority finds that such circumstances are present here. I cannot agree.

Three witnesses offered to testify to the effect that Major Bogan has told them that he—not defendant Goodlow—was responsible for the crime. These three witnesses were: (1) Goodlow himself; (2) Goodlow's wife; and (3) Eugene King, a personal friend of Goodlow. These are not three independent individuals who have no personal interest in the outcome of the case. Rather, their testimony regarding Bogan's out-of-court declarations would seem to be particularly suspect due to their natural concern that the defendant be acquitted.[1]

The proffered testimony also revealed that Bogan had allegedly made his declaration to Mrs. Goodlow when no one else was present, and he allegedly made his statement to Goodlow with only King present and to King with only Goodlow present. While the statements to Goodlow and King were supposedly made in a pool hall, neither of them could say who else might have overheard them, although Goodlow stated that other persons had done so. The result of all this is that the only witnesses to Bogan's alleged declarations against penal interest were three individuals with a strong interest in the outcome of the case. This hardly gives an "aura of trustworthiness" to this testimony, especially when Bogan was unavailable for cross-examination.

The trial judge, in ruling that the hearsay testimony was inadmissible, specifically found "that the contributing circumstances do not clearly indicate the trustworthiness of the statements of Bogan. On the contrary, they indicate otherwise." During the voir dire examination of the witnesses on this point the judge had the opportunity to observe them and their demeanor and was thus in a better position to make a determination on trustworthiness than we are.

If we are to apply the exception to the hearsay rule for declarations against penal interest, we should require more evidence of reliability than the bare testimony of the defendant, his family and friends. In the instant case the proffered hearsay evidence smacks of a concocted story to place blame on the conveniently missing Major Bogan. The indicia of trustworthiness which were present in Chambers are missing here.[2]

I would affirm the judgment of the trial court.

---

1. While it does not bear directly on the question of admissibility, it is noteworthy that the jury herein did not find Goodlow, his wife and King convincing witnesses either. All three testified to the jury to the effect that Goodlow had a complete alibi, in that he was accompanying King and several others on a trip to Columbia, Missouri, at the time the crime occurred in St. Louis.

2. In Chambers the declarant was present in the court and was, therefore, available for cross-examination. The declarant had signed a sworn confession, and there was corroborating testimony from an eyewitness to the crime (a shooting). There was also testimony that the declarant had been seen with a gun immediately after the shooting. Additionally, the declarant had given independent confessions numerous times. These many indicia of trustworthiness found in Chambers clearly distinguish that case from the one before us.