### UNITED STATES of America, Plaintiff-Appellee,

v.

### Wilburn Erdie HUGHES, Defendant-Appellant.

No. 74–4050.

United States Court of Appeals, Fifth Circuit.

April 5, 1976.

Charles J. Weeks, Pascagoula, Miss., for defendant-appellant.

Wayman G. Sherer, U. S. Atty., James C. Thomason, III, Herbert H. Henry, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before GEWIN, COLEMAN and GEE, Circuit Judges.

GEE, Circuit Judge:

Wilburn Hughes was convicted of violations of 18 U.S.C. § 2312 and 18 U.S.C. § 2313 in connection with the interstate transportation and attempted sale of a stolen truck. The truck was stolen near Atlanta, Georgia, on the night of April 16, 1974, and Hughes, who lived in Selma, Alabama, attempted to sell it in Huntsville, Alabama, on April 19, 1974.

During his jury trial, Hughes called Arthur Wayne Roberts as a witness in an attempt to prove that Roberts was the guilty party. On direct examination, Roberts denied that he brought the truck to Selma or that someone returned him to Atlanta on the night of April 16. He also denied that he had ever admitted to anyone that he took the truck in Georgia and brought it to Alabama. Appellant's counsel admitted that he knew before he put Roberts on the stand that he would deny stealing the truck. Appellant's brother, David Hughes, then testified that he and his wife took Roberts from Selma back to Atlanta on the night of April 16. He also testified that he did not know the truck was stolen until informed by the FBI after the attempted sale. However, David Hughes was not allowed to testify about his conversations with Roberts because the judge sustained an objection on the basis of hearsay. Appellant then called Ms. Faye Anderson, a woman whose relationship to the principals is unknown. The judge sustained the government's objection to her testimony about a conversation with Roberts on the theories that it was hearsay and that it was an attempt by Hughes to impeach his own witness. Counsel then indicated that he had one additional witness [1] who would testify to the same effect as Ms. Anderson, and the judge ruled that it would not be necessary to produce this witness because he would sustain the same objections. No formal offer of proof was ever made as to the testimony that would have been elicited from David

1. The record does not reveal the identity of this third witness, but appellant's counsel indicated that the third witness was a party to the same conversation involved in Ms. Anderson's excluded testimony.

Hughes, Faye Anderson, or the third witness, but the prosecutor represented to the judge that the latter two would testify that Roberts told them that he stole the truck and drove it from Georgia to Alabama.

Appellant's sole argument on appeal is that the exclusion of Roberts' out-of-court statements constitutes a denial of due process under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).[2] Since the *Chambers* Court stressed that its ruling was a narrow one, limited to the "facts and circumstances of this case," *id.* at 303, 93 S.Ct. at 1049, 35 L.Ed.2d at 313, we must analyze the facts in *Chambers* in some detail in order to compare them to the facts here.

In *Chambers,* Leon Chambers sought to defend against a murder charge by showing that Gable McDonald was the murderer. He called McDonald to introduce McDonald's prior, sworn confession. He also introduced the testimony of one witness that he saw McDonald shoot the decedent and the testimony of another witness that he saw McDonald with a gun shortly after the murder. On government cross-examination, McDonald repudiated his confession and offered an alibi. The state trial judge refused to allow Chambers to cross-examine McDonald as an adverse witness with respect to the repudiation of his confession. Indeed, Chambers was restricted in his direct examination of McDonald by the state rule that the party calling a witness was bound by anything the witness said. The trial judge also excluded the testimony of three witnesses, friends or neighbors of McDonald, that he had confessed his guilt to them on three separate occasions. The Supreme Court held that the exclusion of this critical hearsay evidence, coupled with the refusal to permit Chambers to cross-examine McDonald, denied Chambers the fair trial required by due process. *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 312.

■ A comparison of the facts and circumstances in this case with those in *Chambers* convinces us that Hughes was not denied due process. Hughes was not directly prevented from cross-examining Roberts because, unlike Chambers, he never sought to treat Roberts as an adverse witness. His direct examination was not similarly constrained because the federal rule has never bound a party to the truth of every statement of his witnesses. *E. g., Little v. Littlefield,* 311 F.2d 885 (5th Cir. 1962), *modified,* 313 F.2d 959 (1963). There is no independent evidence corroborating the substance of Roberts' prior statements—a factor which the *Chambers* Court stressed in determining that the excluded statements bore such assurances of trustworthiness that they were within the basic rationale of an exception to the hearsay rule. 410 U.S. at 300–02, 93 S.Ct. at 1048–49, 35 L.Ed.2d at 311–12.[3]

---

**2.** Hughes does not argue that the judge erred in his application of the evidentiary rules which govern this case tried before the effective date of the Federal Rules of Evidence. Under the governing rules, a prior inconsistent statement by Roberts was inadmissible hearsay if offered for its truth. While such statements were not hearsay for the purpose of impeaching Roberts, a party was not generally allowed to impeach his own witness unless the witness's testimony was a surprise. *E. g., United States v. Hicks,* 420 F.2d 814 (5th Cir. 1970); *Fontaine v. Patterson,* 305 F.2d 124 (5th Cir. 1962). Since Hughes does not object to the judge's interpretation of these principles, and since Hughes' attorney never specified the purpose for which he sought to introduce the prior statements, we do not consider whether their exclusion was a proper application of the rule against impeaching one's own witness, *but cf. United States v. Prince,* 491 F.2d 655, 659 (5th Cir. 1974), or whether they fit within any exception to the traditional federal hearsay rule.

**3.** The *Chambers* Court cited four factors as indicating the reliability of the unsworn out-of-court statements involved: (1) they were made spontaneously to a close acquaintance of the declarant shortly after the crime; (2) they were corroborated by independent evidence; (3) they were unquestionably against the declarant's interest; and (4) the declarant was available for cross-examination by the government. 410 U.S. at 300–01, 93 S.Ct. at 1048, 35 L.Ed.2d at 311–12. While the third and fourth factors are also present in this case, the record is too sparse for us to evaluate the spontaneity of Roberts' statements or how closely acquainted he was with Hughes' witnesses.

Finally, the statements excluded here were not necessarily exculpatory; they may merely have shown that Roberts and Hughes were accomplices. In contrast, the *Chambers* Court stressed that the state's evidence excluded the idea that more than one person committed the crime so that the change in Mc-Donald's testimony ". . . inculpated Chambers to the same extent that it exculpated McDonald." *Id.* at 297, 93 S.Ct. at 1047, 35 L.Ed.2d at 310.

 We recognize that the impact of *Chambers* on federal criminal trials is somewhat unclear.[4] But surely *Chambers* does not establish that due process is denied when all the record shows is that the judge refused to permit the defendant to solicit uncorroborated hearsay testimony impeaching or contradicting another defense witness.

Our conclusion is reinforced by the treatment of *Chambers* in *Maness v. Wainwright*, 512 F.2d 88 (5th Cir.), rehearing en banc granted, 519 F.2d 1085 (1975), en banc vacated, 528 F.2d 1381 (Mar. 18, 1976). Confronted with a situation in which state rules on hearsay and voucher combined to exclude evidence which suggested the habeas corpus petitioner's innocence, the court focused on the degree to which the evidentiary rulings made Maness' defense "less persuasive." *Id.* at 91. The court stated that Maness' strongest point was the state's refusal to permit him to cross-examine his wife as an adverse witness. *Id.* This factor is not squarely presented by the record in our case since Hughes did not seek to cross-examine Roberts or to treat him as an adverse witness. Despite a record as sketchy as this one, the *Maness* court attempted to measure the exculpatory impact of the excluded material. As we have noted, the testimony excluded here was not clearly exculpatory. Finally, the *Maness* court decided

that the hearsay testimony of close relatives of the defendant did not contain the same "persuasive assurances of trustworthiness" found in *Chambers* and that the assertion that the excluded material cross-corroborated itself did not provide the same degree of independent corroboration of reliability as was present in *Chambers*. *Id.* at 92. These conclusions are fully applicable to the testimony of appellant's brother and partially applicable to that of the two other witnesses.

Undoubtedly Hughes would have had a stronger defense if this material had been admitted. But under all the facts and circumstances, we do not believe that the evidentiary rulings deprived him of a trial in accordance with the requirement of fundamental fairness embodied in the due process clause.

AFFIRMED.

---

4. *Compare United States v. Walling*, 486 F.2d 229, 238–39 (9th Cir. 1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974), *with United States v. Goodlow*, 500 F.2d 954 (8th Cir. 1974). Fortunately, the confusion will soon be moot; under the Federal Rules of Evidence, statements such as those excluded here would be admissible for impeachment, *see* Rule 607 and Rule 801(c), Federal Rules of Evidence, but they would probably be inadmissible as substantive evidence, *see* Rule 804(b)(3), Federal Rules of Evidence.