COMMONWEALTH *vs.* THOMAS CARR.

Suffolk.    September 12, 1977. — November 9, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* Declaration against interest.   *Due Process of Law,* Declaration against interest.   *Practice, Criminal,* Report.

Discussion of the common-law distinction between the admissibility of extrajudicial statements against a declarant's pecuniary or proprietary interest and the inadmissibility of statements against his penal interest. [620-622]

This court declared that rule 804 (b) (3) of the Federal Rules of Evidence, permitting an extrajudicial statement against a declarant's penal interest to be admitted in evidence provided corroborating circumstances clearly indicate its trustworthiness, should be followed in substance pending further action by the court. [622-625]

A decision on the admissibility of extrajudicial statements made against a declarant's penal interest under the guidelines established by rule 804 (b) (3) of the Federal Rules of Evidence satisfies due process requirements. [625]

INDICTMENT found and returned in the Superior Court on October 16, 1975.

The case was tried before *Brogna, J.,* and, on a motion for a new trial, a question of law was reported by him to the Appeals Court. The Supreme Judicial Court ordered direct review.

*Robert F. Muse* for the defendant.

*Peter D. Feeherry,* Assistant District Attorney (*Eileen M. O'Connor,* Special Assistant District Attorney, with him) for the Commonwealth.

KAPLAN, J.   This case reached the Appeals Court on report of the trial judge, and we transferred it here under G. L. c. 211A, § 10 (A). The defendant Thomas Carr was tried to a jury on an indictment charging him with distributing a class B controlled substance, cocaine, in violation of G. L. c. 94C, §§ 31-32, and he was found guilty of that offense. In the course of the trial, the defense offered

three witnesses who were prepared to testify that one Nelson Wood, indicted for the same crime but not joined as a defendant, had made extrajudicial statements tending to incriminate himself and exonerate the defendant. The judge excluded this testimony as inadmissible hearsay, applying the doctrine in the Commonwealth that a declaration "against penal interest" did not figure as an exception to the rule barring hearsay. He did not accept the defendant's argument that *Chambers* v. *Mississippi,* 410 U.S. 284 (1973), required admission of the testimony as a matter of due process of law. On the defendant's postverdict motion for a new trial, the judge reported the question raised by his ruling, stating that if the exclusion was error, he would grant the motion for a new trial as matter of law, otherwise he would let the verdict stand.

We conclude, in line with the weight of modern authority in this country, that the doctrine mentioned should be reformulated. The trial judge is to decide the new-trial motion in that light. There is no material due process question.

1. We describe the content of the judge's brief report of the evidence at trial to which is appended a transcript of the voir dire testimony of Wood and the defendant's offers of proof.

Special Agent Sullivan, testifying as the principal witness for the Commonwealth, stated that he met Ralph Chute by prearrangement on the night of December 23, 1974, and proceeded with Chute to Broadway, Somerville, where they met Mendousa and Tommaro. The group drove to 71 Parkton Road, Jamaica Plain, Boston, and parked in front of the building. Sullivan remained on the sidewalk while the other three entered. In a few minutes, the three emerged, accompanied by men introduced to Sullivan as "Frank" and "Otto." Mendousa told Sullivan that the pair were the source of an unlimited supply of high quality cocaine. Frank said he was the "main man" but the transaction would be handled by Otto. Sullivan then paid $450 for a packet of cocaine handed to him by Otto. Having made arrangements for future dealings, Sul-

livan left, as did Chute, Mendousa, and Tommaro. Sullivan concluded his testimony by identifying the defendant as Otto. This was the only testimony identifying the defendant as the seller.

Nelson Wood, identified as "Frank" by the police, was arrested for a narcotics law violation based on the same transaction. Later the defendant was arrested. At the time of the defendant's trial, the indictment against Wood was still outstanding but he had not been tried.

The defendant's defense was that he had not taken part in the sale to Sullivan. Several witnesses testified that while the sale was going on the defendant remained in his apartment at 71 Parkton Road for all but a few seconds and that he had not been on the street. Witnesses testified that the defendant had a full beard at the time. Sullivan testified that Otto was clean shaven. Special Agent Kenney, who observed the transaction through binoculars, testified that the person who made the sale was clean shaven; he was unable to identify the defendant positively as the seller.

Wood was called by the defense as a witness but on voir dire claimed and was allowed his privilege against self-incrimination in refusing to answer any questions of substance regarding his relation with the defendant or his out-of-court statements. Offers of proof were then made as follows.

Phyllis Carr, the defendant's mother, would testify that Wood, with whom she was friendly, spoke to her on the night he was indicted and perhaps fifteen times thereafter and told her that the police were trying to involve the defendant and that the defendant had not been on the street. He asked what he could do to get the defendant out of the situation. Joseph Moscaritolo, a friend of the defendant, would testify that Wood, within a week of his indictment, told him he could not understand why the police had arrested the defendant as the defendant had not been on the street and had nothing to do with the sale. The defendant would testify that Wood spoke to him after being indicted and said he had made the sale while sitting

in the car with Sullivan; that Sullivan asked him whether
Otto lived in the apartment and he answered yes; that
Sullivan said Mendousa and Tommaro claimed "Otto
Carr" was involved, but he, Wood, had answered that
Carr had nothing to do with the business. After the de-
fendant was arrested, Wood apologized for involving him
and told him on several occasions that he would see that
the defendant was cleared and would take the stand and
testify truthfully that the defendant had nothing to do
with the sale.

2. Reserving further discussion of the trial judge's re-
port to point 3 below, we reexamine this court's generally
unexplained recognition of a much criticized common-law
distinction: whereas statements against a declarant's pe-
cuniary or proprietary interest are admissible as an excep-
tion to the hearsay rule, statements against his penal
interest are excluded. In *Commonwealth* v. *Chabbock*, 1
Mass. 144 (1804), the court refused to admit testimony
about a third person's confession to the crime being tried
because "it was no more than hearsay." But as early as
*Pool* v. *Bridges*, 4 Pick. 378 (1826), the court admitted the
statement of an absent individual that property in the
declarant's possession belonged to the plaintiff, stating
that this declaration was part of the *"res gestae," id.* at
379, and finding its reliability supported by the fact that
it was "against the interest of the party" making it, *id.*
at 380. See *Currier* v. *Gale*, 14 Gray 504 (1860). One imag-
ines that this and other courts might have come to apply
the same reasoning to declarations tending to expose the
maker to punishment, had this development not been
inhibited by a decision with the authority of the House
of Lords, the *Sussex Peerage Case*, 11 Clark & Fin. 85, 8
Eng. Rep. 1034 (1844), which was read by contemporary
writers as limiting the hearsay exception to statements
tending to impair the declarant's pecuniary or proprietary
interest.[1] When an opportunity occurred in *Common-*

---

[1] A leading English authority on the law of evidence questions the
necessity of this reading of the *Sussex Peerage Case*. See R. Cross, Evi-
dence 465 (4th ed. 1974).

*wealth* v. *Densmore,* 12 Allen 535 (1866), to extend the
exception to a declaration against penal interest, the court
refused, *id.* at 537, but without attempting to justify the
difference thus established. Subsequent cases have like-
wise excluded evidence of out-of-court self-incriminating
statements without defending the distinction.[2]

The total rejection of declarations against penal interest
was attacked by Mr. Justice Holmes in a dissenting opin-
ion in *Donnelly* v. *United States,* 228 U.S. 243, 277 (1913),
set out in the margin,[3] and the doctrine has been a target
of leading Anglo-American treatise writers.[4] Both the

---

[2] See *Commonwealth* v. *Wakelin,* 230 Mass. 567, 575-576 (1918);
*Commonwealth* v. *Sacco,* 259 Mass. 128, 140-141 (1927); *Common-
wealth* v. *Chin Kee,* 283 Mass. 248, 263 (1933); *Commonwealth* v. *Un-
derwood,* 358 Mass. 506, 508 n.1 (1970); *Commonwealth* v. *Arsenault,*
361 Mass. 287, 299 (1972). In contrast to these rulings, see the remarks
in *Commonwealth* v. *Geraway,* 355 Mass. 433, 440-441 (1969), and
*Commonwealth* v. *Saville,* 353 Mass. 458, 461 (1968), quoting from
*Commonwealth* v. *Owens,* 350 Mass. 633, 635-636 (1966).

[3] The dissent, in which Lurton and Hughes, JJ., joined, is as follows:
"The confession of Joe Dick, since deceased, that he committed the
murder for which the plaintiff in error was tried, coupled with circum-
stances pointing to its truth, would have a very strong tendency to make
any one outside of a court of justice believe that Donnelly did not
commit the crime. I say this, of course, on the supposition that it should
be proved that the confession really was made, and that there was no
ground for connecting Donnelly with Dick. — The rules of evidence in
the main are based on experience, logic and common sense, less ham-
pered by history than some parts of the substantive law. There is no
decision by this court against the admissibility of such a confession; the
English cases since the separation of the two countries do not bind us;
the exception to the hearsay rule in the case of declarations against
interest is well known; no other statement is so much against interest
as a confession of murder, it is far more calculated to convince than
dying declarations, which would be let in to hang a man, *Mattox* v.
*United States,* 146 U.S. 140 [1892]; and when we surround the accused
with so many safeguards, some of which seem to me excessive, I think
we ought to give him the benefit of a fact that, if proved, commonly
would have such weight. The history of the law and the arguments
against the English doctrine are so well and fully stated by Mr. Wig-
more that there is no need to set them forth at greater length. 2
Wigmore, Evidence, §§ 1476, 1477."

[4] See, e.g., R. Cross, Evidence 465 (4th ed. 1974) ("there is a crying
need for reform"); McCormick, Evidence § 278 (1972); 5 J. Wigmore,
Evidence § 1477 (Chadbourn rev. 1974) ("unreasoning limitation ...
barbarous doctrine").

American Law Institute's Model Code of Evidence, rule
509 (1942), and the 1953 version of Uniform Rules of
Evidence, rule 63 (10),[5] provided for the admission of dec-
larations against penal interest equally with declarations
against pecuniary interest and on the same ground of their
putative reliability as justifies various other exceptions to
the hearsay rule. California and New York, overruling
their older cases, have taken this course. *People* v. *Spriggs,*
60 Cal. 2d 868 (1964) (Traynor, J.). *People* v. *Brown,*
26 N.Y.2d 88 (1970). Other appellate courts have adopted
a like view, with many of them imposing a requirement
of corroboration as a condition of accepting these declara-
tions[6] — a precaution indeed intimated by Holmes.[7]

Most suggestive and significant is the resolution of the
problem appearing as rule 804 (b) (3) of the Federal Rules
of Evidence enacted in 1975 after lengthy study. 28 U.S.C.
app. (Supp. V 1975). The draftsmen started with the as-
sumption that complete exclusion of declarations against
penal interest is indefensible. But reacting, like the many
State courts mentioned, to an apprehension that there are
hazards of fabrication or unreliability with respect to such
statements that are more serious than those attaching to

---

[5] The Uniform Rules of Evidence have been revised and are now
virtually identical with the Federal Rules of Evidence mentioned below.

[6] See *Deike* v. *Great Atl. & Pac. Tea Co.,* 3 Ariz. App. 430, 432-433
(1966); *State* v. *Leong,* 51 Haw. 581, 587-588 (1970); *People* v. *Lettrich,*
413 Ill. 172, 178-179 (1952) (common law should not be followed where
"justice demands a departure"); *State* v. *Higginbotham,* 298 Minn. 1,
5 (1973) (admissible with "independent corroborating evidence that be-
speaks reliability"); *Sutter* v. *Easterly,* 354 Mo. 282, 296-297 (1945);
*Band's Refuse Removal, Inc.* v. *Borough of Fair Lawn,* 62 N.J. Super.
522, 560-561 (1960) (admissible with "indicia of trustworthiness");
*Gray* v. *State Capital Life Ins. Co.,* 254 N.C. 286, 290 (1961); *Howard*
v. *Jessup,* 519 P.2d 913, 915-917 (Okla. 1973). A few jurisdictions have
chosen to adhere to the older rule. See *Thompson* v. *State,* 309 So. 2d
533 (Miss.), cert. denied, 423 U.S. 924 (1975); *Pitts* v. *State,* 307 So. 2d
473 (Fla. Dist. Ct. App.), cert. dismissed, 423 U.S. 918 (1975). See
generally 5 J. Wigmore, Evidence § 1476 n.9 (Chadbourn rev. 1974).

Changes in the common-law doctrine have also come about by statute,
see Kan. Stat. § 60-460(j), and by rule of court, see, e.g., Me. R. Evid.
804(b) (3). See 5 J. Wigmore, *supra* at § 1477 n.7.

[7] See note 3 *supra.*

statements against pecuniary interest,[8] the rule insists on strong safeguards as to the former. After laying down the threshold definition that a statement, to qualify for admission, must have tended so far to subject the declarant to criminal liability that a reasonable man in the declarant's position would not have made it unless he believed it to be true, the rule goes on to provide that such a statement tending to expose the declarant to criminal liability, and offered to exculpate the accused, is not admissible "unless corroborating circumstances clearly indicate ... [its] trustworthiness ...."[9]

3. Impressed favorably by the Federal solution, we hold that it should be followed in substance, pending any action we may take in response to recommendations on the subject that may be made by the Advisory Committee on

[8] For expressions of such concern, see *State* v. *Larsen,* 91 Idaho 42, 49 (1966) (changing the common-law rule); *People* v. *Lettrich,* 413 Ill. 172, 178 (1952) (admitting the testimony); *Pitts* v. *State,* 307 So. 2d 473, 486 (Fla. Dist. Ct. App.), cert. dismissed, 423 U.S. 918 (1975) (rejecting the evidence). And see note 9 *infra.*

[9] Rule 804(b)(3) provides: "(b) Hearsay exceptions. — The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ... (3) Statement against interest. — A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

The House Report, No. 650, 93d Cong., 1st Sess. 16, explains why Congress strengthened the corroboration requirement proposed by the Supreme Court of the United States: "As for statements against penal interest, the Committee shared the view of the Court that some such statements do possess adequate assurances of reliability and should be admissible. It believed, however, as did the Court, that statements of this type tending to exculpate the accused are more suspect and so should have their admissibility conditioned upon some further provision insuring trustworthiness. The proposal in the Court Rule to add a requirement of simple corroboration was, however, deemed ineffective to accomplish this purpose since the accused's own testimony might suffice while not necessarily increasing the reliability of the hearsay statement. The Committee settled upon the language 'unless corroborating circumstances clearly indicate the trustworthiness of the statement' as affording a proper standard and degree of discretion."

Rules of Evidence appointed by this court in 1976 and now pursuing its mission.

In applying the corroboration requirement, judges are obliged to exercise a discriminating judgment and in practice under the Federal rule a considerable number of proffered declarations have been excluded.[10] We are unable to say on the basis only of the report of the trial judge whether the testimony about Wood's statement deserves admission here. The matter remains for determination by the trial judge who is acquainted with all the evidence. He will consider as relevant factors the degree of disinterestedness of the witnesses giving corroborating testimony as well as the plausibility of that testimony in the light of the rest of the proof. There was evidence that the defendant was bearded at the time of the sale, and that he was not on the street. But on each point we lack full information as to the identity of the witnesses and have no clear understanding of the strength of their testimony or the extent to which it was put in question by the Commonwealth's cross-examination or contradictory proof.

Reverting to the threshold requirement that the declaration be truly against the declarant's penal interest,[11] we note from Wood's voir dire that after his arrest he requested an examination for drug-dependency under G. L. c. 123, § 47. It remains unclear when this application was made in relation to the time of Wood's various statements to Phyllis Carr, Moscaritolo, and the defendant. Wood was declared drug dependent and his case was stayed for

---

[10] See, e.g., *United States* v. *Guillette,* 547 F.2d 743, 753-755 (2d Cir. 1976); *United States* v. *Bagley,* 537 F.2d 162, 167-168 (5th Cir. 1976), cert. denied, 429 U.S. 1075 (1977); *Lowery* v. *Maryland,* 401 F. Supp. 604, 607-608 (D. Md. 1975), aff'd, 532 F.2d 750 (4th Cir.), cert. denied, 429 U.S. 919 (1976). See also *United States* v. *Brandenfels,* 522 F.2d 1259, 1264 (9th Cir.), cert. denied, 423 U.S. 1033 (1975) (applying the new Federal rule arguendo); *People* v. *Chapman,* 50 Cal. App. 3d 872, 880-991 (1975) (affirming exclusion of untrustworthy statement).

[11] The "unavailability" requirement has been clearly met here by reason of Wood's successful assertion of a testimonial privilege. See *Commonwealth* v. *DiPietro, ante,* 369, 382 (1977); Federal Rules of Evidence 804(a)(1).

one year while he was to undergo treatment at the Brookline Health Center, the indictment against him to be dismissed if he completed the treatment. See § 47. This suggests that a question may be raised whether Wood reasonably would fear that penal consequences might flow from his disclosures. The fact that Wood's claim of privilege was allowed does not necessarily betoken an affirmative answer to this question.

4. A decision on the admissibility of the testimony of witnesses to Wood's declarations, reached under the standard we now adopt, would satisfy due process. *Chambers* v. *Mississippi,* 410 U.S. 284 (1973), surely does not have the broad reach for which the defendant contends. The declarant in *Chambers,* who recanted his confessions, was available at trial but if called by the defendant could not be cross-examined by him because of Mississippi's "voucher" rule; and testimony by third persons about the declarant's confessions was excluded as hearsay although the substance of the confessions was corroborated by evidence of great reliability. The Court ruled that "under the facts and circumstances of this case" the defendant was denied due process. 410 U.S. at 303. Federal and State courts have expressed the belief that *Chambers* has not significantly trammeled judicial discretion to exclude unreliable declarations against penal interest,[12] and *Chambers*-based claims have been consistently rejected.[13]

5. As noted, the case was reported by the trial judge after verdict but pending decision of a motion for a new

---

[12] See, e.g., *United States* v. *Walling,* 486 F.2d 229, 238-239 (9th Cir. 1973), cert. denied, 415 U.S. 923 (1974); *Thompson* v. *State,* 309 So. 2d 533, 535 (Miss.), cert. denied, 423 U.S. 924 (1975); *Ragler* v. *State,* 18 Md. App. 671, 676-677 (1973); *Pitts* v. *State,* 307 So. 2d 473, 483-485 (Fla. Dist. Ct. App.), cert. dismissed, 423 U.S. 918 (1975).

[13] See, e.g., *Commonwealth* v. *Meuse,* 3 Mass. App. Ct. 189, 192 (1975); *United States* v. *Hughes,* 529 F.2d 838, 840-841 (5th Cir. 1976); *United States* v. *Pena,* 527 F.2d 1356, 1362 (5th Cir.), cert. denied, 426 U.S. 949 (1976); *United States* v. *Brandenfels,* 522 F.2d 1259, 1264 (9th Cir.), cert. denied, 423 U.S. 1033 (1975); *Maness* v. *Wainwright,* 512 F.2d 88, 92 (5th Cir. 1975), cert. granted, 429 U.S. 893 (1976); *People* v. *Craven,* 54 Ill. 2d 419, 427-429 (1973).

trial. General Laws c. 278, § 30, speaks of the report of a question of law arising "upon the trial of a person convicted in the superior court."[14] *Commonwealth* v. *Burton,* 183 Mass. 461, 473-474 (1903), suggests that a statutory occasion is not presented where a new-trial motion remains to be disposed of. Whatever may be the validity of this view in other circumstances, here we think the statute is satisfied in substance: the question reported arose during the trial and was then ruled on; and the finding of guilty may suffice in this context as a conviction though sentence has not passed. Cf. *Forcier* v. *Hopkins,* 329 Mass. 668 (1953); *Commonwealth* v. *Lockwood,* 109 Mass. 323 (1872).

The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

[14] Section 30 provides: "If, upon the trial of a person convicted in the superior court, a question of law arises, which, in the opinion of the presiding justice, is so important or doubtful as to require the decision of the supreme judicial court, he shall, if the defendant desires or consents to it, report the case so far as necessary to present the question of law arising therein; and thereupon the case shall be continued to await the decision of the supreme judicial court."