## ILLINOIS CENTRAL GULF RAILROAD COMPANY, An Illinois Corporation, Plaintiff–Appellant, Cross–Appellee,

v.

## CROWN ZELLERBACH CORPORATION, A Nevada Corporation, Defendant–Appellee, Cross–Appellant.

No. 88–4332
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1988.
Order Granting Petition to Amend
Dec. 13, 1988.

---

Before CLARK, Chief Judge,
JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Illinois Central Gulf Railroad Co. ("ICG")
and Crown Zellerbach Corp. ("Crown")
both appeal from a judgment granting to
ICG contribution from Crown, based on an
indemnity agreement, of one-half of ICG's
liability under the Federal Employers' Lia-
bility Act ("FELA") for a railroad worker's
death on Crown property. ICG argues on
appeal that it should have been awarded
full indemnity, while Crown argues that,
because ICG had no liability to justify set-
tling the claim, Crown was not obligated to
indemnify ICG under the agreement. We
affirm the judgment of the magistrate.

I

On December 12, 1982, an ICG employee,
Herbert Drew, was killed when he fell be-
neath the wheels of a train car which he
was switching from Crown's warehouse.
Drew helped to couple the cars inside the
warehouse, which left him on the south
side of the track. Drew was next in charge
of throwing the switch on the north side of
the track. After the cars passed by the
switch, a co-worker found Drew's body
along the tracks in the yard.

On that day the track was wet from
intermittent rain. A drain outside the
warehouse was clogged, causing the area
inside the warehouse to be muddy and un-
safe. Mud was found on the step ladder
and cross-over platform of the car being
switched, as well as on Drew's boots. In
addition, there was a "soft spot" beneath
the tracks outside the warehouse that
caused the cars to rise and fall six to eight
inches as they passed over that section of
the track. No one actually saw Drew fall.

ICG and Crown had a sidetrack agree-
ment and a supplemental agreement pro-
viding for maintenance of the railroad
tracks as follows:

> The shipper shall, at all times, maintain
> the track in a condition which will safely
> and satisfactorily accommodate the
> equipment operated and handled over the

Burkett H. Martin, Douglas E. Hassell,
Vicksburg, Miss., for plaintiff-appellant,
cross-appellee.

William M. Delehite, Jr., Jackson, Miss.,
for defendant-appellee, cross-appellant.

same by the railroad company. The chief engineer of the railroad company, or his representative shall be the sole judge of the material required and character and amount of work necessary to keep the track in condition to safely accommodate the cars and engines operated over same by the Railroad Company. All work done and material furnished under this contract by the shipper shall be satisfactory in all respects to the chief engineer of the Railroad Company. In case the shipper shall fail to maintain the track as aforesaid, for a period of five days after the Railroad Company shall have notified the shipper of the need of repairs or renewals, the Railroad Company shall have the right at its option to make all necessary repairs or renewals and the shipper shall reimburse the Railroad Company for all expense so incurred. . . .

Railroad Company shall be the owner of and shall maintain that portion of said track from point switch to right of way line and shipper shall be the owner of the remainder of the track and shall maintain said portion of the track in compliance with the terms of Section 2 of said agreement of August 30, 1957.

The agreement also included the following clause containing a full indemnity provision and an equal-shares provision:

The shipper also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the shipper, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any person or corporation, while on or about the track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be born by them equally.

After Drew's death, the administratrix of his estate sued in state court seeking recovery from ICG under FELA. ICG called on Crown to defend the Drew claim. Crown denied liability, and refused to defend. ICG then settled the Drew claim for $125,-000.

ICG later brought this suit against Crown in federal court seeking reimbursement, based on the indemnity agreement, for ICG's liability under FELA for Drew's death. The nonjury trial was held before a magistrate, who considered documentary evidence, including depositions, but there was no live testimony. The magistrate ruled that Crown was liable under the agreements, but that since ICG was itself negligent, it could recover contribution of only one-half of the total liability under FELA for Drew's death, plus one-half of the attorney's fees and expenses incurred in defense of the Drew suit.

Both parties appeal. Crown contends that it is not liable in any amount under the indemnity agreement because ICG's liability was not sufficiently certain under FELA to justify settling the Drew case. ICG argues that it should recover full indemnity from Crown rather than contribution of one-half because ICG was not negligent. We reject both arguments and affirm the magistrate's order awarding ICG one-half of the total liability.

## II

We address first Crown's claim that it should not be held liable to ICG in any amount under the sidetrack agreement. The relevant portions of the agreement provide that Crown will indemnify ICG for loss, damage, or injury from any act or omission of Crown, its employees, or agents to the person or property of ICG and its employees while on or about the track. In a supplemental agreement, Crown agreed to maintain the track where the accident occurred.

The magistrate held that Crown was liable to ICG under this agreement. The magistrate found that Crown had failed to maintain the track properly and that Crown's failure caused the unsafe conditions that were indisputably contributing factors in Drew's death. The magistrate also found that Crown's failure caused a loss to ICG since the unsafe conditions that resulted from Crown's failure to maintain the track were the basis for ICG's liability to Drew under FELA for failing to provide

Drew with a safe workplace. Although ICG, having settled the Drew claim before trial, was never actually found to be liable under FELA for Drew's death, the magistrate held that, since ICG tendered defense of the Drew claim to Crown, ICG had only to show potential liability under FELA to justify settling the Drew claim and therefore to support ICG's claim for indemnity from Crown. The magistrate further held that ICG had satisfied this burden, thereby rendering Crown liable under the indemnity clause.

Crown's primary argument on appeal is that the magistrate applied the wrong standard in evaluating Crown's obligation to indemnify ICG. Crown agrees with the magistrate that it is liable to ICG only if Crown's act or omission, in this case Crown's failure to maintain the track properly, caused ICG to be liable for Drew's death under FELA. Crown disputes, however, the magistrate's holding that ICG only has to show potential liability under FELA. Crown maintains that the magistrate misinterpreted the standard as articulated in *Burlington Northern, Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 282 (8th Cir.1982). According to Crown, *Burlington* established that ICG should be required to prove *probable* liability under FELA, rather than *potential* liability, before Crown can be held liable under the indemnity agreement. Crown goes on to argue that the evidence does not satisfy this stricter standard.

We concur with the magistrate's reading of *Burlington*. In that case the Eighth Circuit held that a party seeking indemnity for liability incurred in settling a claim after notice to the indemnitor must show that its settlement was reasonable and in good faith; the Eighth Circuit further observed that the fact finder could review the condition of good faith by evaluating the "probability" of liability. 671 F.2d at 282. Thus Crown argues that *Burlington* requires that ICG make a showing of probable liability before indemnification by Crown may be required. We think Crown picks the basis for its argument out of context and overlooks the critical holding of the case. In applying the rule to the facts of that case, the court determined that the condition of good faith settlement had been met since "potential liability under the FELA was established as a matter of law." *Id.* at 283. We have no doubt that the Eighth Circuit meant that, in evaluating the degree of likelihood, a finding of *potential* liability supports a claim for indemnification where the indemnitee, after notice to the indemnitor, settles the underlying claim. This reading of *Burlington* has been applied in the Fifth Circuit. *See, e.g., Illinois Central Gulf RR Co. v. International Paper Co.*, 824 F.2d 403 (5th Cir. 1987); *see also Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125, 1129–30 (5th Cir.1977). Thus, the magistrate applied the correct legal standard in evaluating ICG's settlement of the Drew claim.

■ As a result, the magistrate's holding that ICG is entitled to indemnification for its liability under FELA is correct. The magistrate's holding that ICG was potentially liable under FELA for failing to provide Drew with a safe place to work is supported by the evidence. The area surrounding the track was wet, muddy, and slick. As a result, the work area was dangerous. This dangerous condition was caused by the rain and by the clogged drains that resulted from Crown's failure to maintain the track. Thus, Crown's "act or omission" caused ICG's potential liability under FELA. Under the agreement, therefore, Crown is obligated to indemnify ICG.

### III

We next address ICG's claim that it deserves full indemnification from Crown. In applying the equal-shares provision of the agreement, the magistrate held that if ICG itself had been negligent, it could recover only contribution of one-half of its liability in the Drew case. Specifically, the magistrate cited *Burlington* for the proposition that Crown had the burden of proving ICG's negligence by common law standards in order to successfully assert the equal-shares provision of the agreement as a defense to full indemnity; mere proof of

ICG's liability under FELA would not establish ICG's negligence. The magistrate found that ICG employees were aware of the conditions on the track on the day of the accident, and that ICG did not warn Drew of the dangerous condition or take steps to correct the condition either by itself or by notifying Crown. As a result, the magistrate held that ICG was, in fact, negligent. The magistrate also noted that ICG's switching procedure, by which Drew was required to cross between moving cars to throw a switch, was a potentially negligent practice. Based on his finding that ICG was negligent, the magistrate awarded ICG contribution from Crown of one-half of ICG's settlement in the Drew case, rather than full indemnity.

### A.

ICG argues that the magistrate misapplied the law to the facts of this case. ICG points out that the magistrate, by denying ICG's claim for full indemnity, in effect applied the doctrine of acquiescence. ICG then compares the instant case to numerous cases that elaborate on acquiescence and apply it to particular facts. In particular, ICG supports its argument that the magistrate misapplied the doctrine of acquiescence by quoting language in the case law which states that an indemnitee's fault must be "serious enough and sufficiently distinct from" the indemnitor's for acquiescence to apply, and that "[o]ne hallmark of such acquiescence is a long continued awareness of the dangerous situation by the indemnitee without either taking any corrective measure or calling upon the indemnitor to do so." *Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co.*, 302 F.2d 843, 848–49 (3d Cir.1962). ICG argues that the evidence does not support "a long continued awareness" of the dangerous condition in this case. Given this language and given the holdings of other similar cases, ICG argues, the magistrate erred in limiting ICG to contribution from Crown of one-half of its liability for Drew's death.

### B.

In examining ICG's argument, we begin by reviewing the role of the doctrine of acquiescence in the cases cited by ICG. Generally, the doctrine of acquiescence is applied to preclude indemnitees from recovering full indemnity when they have acquiesced in the condition that gave rise to the underlying liability. The doctrine originated in the common law, but has been used in the context of indemnity agreements between railroads and industries to construe provisions like those in the instant case. *See, e.g., Erie*, 302 F.2d at 848 (noting that the doctrine is most frequently applied to cases where restitution is required by common law, and adopting the concept for use in construing a railroad-industry indemnity agreement); *Booth–Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902, 906 (9th Cir.1950) ("We think it important to examine the rules of the common law in order more accurately to determine the meaning of the contracts"); *see also Burlington*, 671 F.2d at 286 ("without discussion, (some) courts import the tort law concept of acquiescence into a set of contractual duties"). We think it important to keep in mind that the doctrine of acquiescence is used in this context as an aid to construction of the contract, not as a tort doctrine that, with independent force, establishes the rights of the parties.

Under the doctrine in general, mere knowledge of the dangerous condition does not bar full indemnity. *Burlington*, 671 F.2d at 286 (quoting the comment following the Restatement of Restitution § 95 (1937)). Rather, the indemnitee's fault must be "serious enough and sufficiently distinct from" that of the indemnitor. *Erie*, 302 F.2d at 849. As we have noted, however, the doctrine of acquiescence is only a tool for construing the terms of the agreement. It should be used only insofar as it is consistent with the explicit language and the obvious purpose of the agreement. The Eighth Circuit has noted that the full indemnity provisions are made in contemplation of the railroad's liability under FELA, and that "the obvious purpose of the [full indemnity] agreement is to provide for indemnification of the railroad

when the industry's act or omission violates the railroad's nondelegable duty to furnish a safe place for its employees to work." *Burlington,* 671 F.2d at 284. The equal-shares provision, by comparison, speaks in terms of negligence: "if any claim or liability ... shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally." Thus, mere liability under FELA does not support application of the equal-shares provision; instead, the railroad must be found negligent by common law standards before its recovery from the indemnitor will be limited by the agreement to one-half of the underlying liability. *Burlington,* 671 F.2d at 285; *Steed v. Central of Georgia Ry Co.,* 529 F.2d 833, 838 (5th Cir. 1976); *see also Colonial Stores, Inc. v. Central of Georgia Ry Co.,* 279 F.2d 777, 780 (5th Cir.1960).

■ Thus, in the context of these indemnity agreements, the doctrine of acquiescence is relevant in that it can indicate when the railroad has been negligent within the meaning of the agreement. As stated by the Eighth Circuit, the question is not simply whether the railroad acquiesced in the dangerous condition, but whether, under the circumstances, the railroad's knowledge of the dangerous condition is of sufficient character and quality to show that it acted negligently. *Burlington,* 671 F.2d at 286. For example, acquiescence as established by a "long continued awareness of a dangerous situation by the indemnitee without either taking any corrective measure or calling upon the indemnitor to do so" may constitute negligence. *Burlington,* 671 F.2d at 286; *Erie,* 302 F.2d at 848. Length of time, however, is only one factor; in other circumstances, knowledge for a relatively short period of time may still constitute negligence. *See, e.g., Colonial Stores,* 279 F.2d at 779–80.

### C.

■ We now turn to the magistrate's decision in the instant case. The magistrate did not apply the equal-shares provision merely because ICG was liable under FELA. As the magistrate noted, it was undisputed that all members of the railroad's crew knew about the conditions of the track on the day of the accident. Furthermore, railroad employees stated that the drains were frequently stopped up. One railroad worker even admitted that he had at times cleared the drains himself. In addition, an inspector and repairman for the railroad testified that he had observed the soft spot in the track several times and that it was particularly bad. Under the agreement, ICG could have called on Crown to remedy the dangerous conditions, or ICG could have made repairs itself and sought reimbursement from Crown, or ICG could simply have halted work. Instead, ICG carried on operations in spite of its knowledge of the conditions. Based on these facts, the magistrate found that ICG was negligent by common law standards.

Although the magistrate did not explicitly apply the doctrine of acquiescence as a methodology in finding ICG negligent, it is clear that his conclusion is consistent with that doctrine. The evidence showed more than mere knowledge of the dangerous condition on the part of the railroad; it showed knowledge over an indefinite period of time, concerning both the drains and the soft spot in the track; yet ICG took no corrective measures nor called upon Crown to do so. Furthermore, notwithstanding knowledge of the dangerous conditions, it continued to carry on operations. The fault of the railroad was serious enough to constitute common law negligence, and it was distinct from Crown's negligence in that the railroad negligently failed to take any steps to alleviate the dangerous condition and negligently chose to continue to work under the dangerous conditions.

This outcome is in line with other Fifth Circuit cases. In *Colonial Stores* for example, we upheld a judgment denying full indemnification where evidence that the indemnitee knew or should have known of the dangerous condition and failed to warn the victim presented a question for the trier of fact as to whether the indemnitee was itself negligent. 279 F.2d at 779–80. We hold, therefore, that the magistrate

correctly limited ICG to contribution of one-half of its liability for Drew's death.

### D.

ICG also argues that the magistrate erred in denying full indemnification on the grounds that Drew's crossing between moving cars to throw the switch was "potentially" a negligent practice. ICG claims that there is no evidence to support holding it liable for this act of its employee and, furthermore, that a finding of "potential" negligence is insufficient as a matter of law to satisfy Crown's burden. We note, however, that the magistrate commented on the "potential" negligence of crossing between moving cars only after expressly finding that ICG was negligent on the basis of its failure to take action itself or to require Crown to take action to correct the dangerous condition of which ICG was aware. Since the magistrate had already found independent grounds for finding ICG negligent, it was unnecessary for the magistrate to rule on ICG's liability for Drew's crossing between cars. It is similarly unnecessary for us to review the magistrate's comments regarding the crossing. The magistrate's prior finding of common law negligence is alone sufficient to support application of the equal-shares provision.

### IV

Since the magistrate correctly applied the indemnification agreement to the facts, the judgment of the magistrate awarding to ICG one-half of ICG's total liability under FELA in the Drew case, plus one-half of the costs of defending that case, is

AFFIRMED.

### ORDER

BY THE COURT:

IT IS ORDERED that appellant's petition to amend opinion to include interest on judgment from November 7, 1984, is

GRANTED.