# United States Court of Appeals

## For the First Circuit

No. 09-1186

PETER J. SANTIAGO, JR.,

Petitioner, Appellant,

v.

STEVEN O'BRIEN,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Boudin, Selya and Stahl,

Circuit Judges.

Donald K. Freyleue for appellant.
Susanne G. Reardon, Assistant Attorney General, Criminal Bureau, with whom Martha Coakley, Attorney General, was on brief for appellee.

December 22, 2010

**BOUDIN**, <u>Circuit Judge</u>.  Peter J. Santiago, Jr., appeals from the denial of his petition for a writ of habeas corpus.  At his state trial for trafficking cocaine, he was prevented from introducing hearsay testimony arguably favorable to his defense-- namely, a friend's claim that the drugs at issue belonged to the friend and not Santiago.  He now seeks a writ of habeas corpus premised solely on this alleged violation of his Sixth Amendment right to present a defense.

On November 28, 1997, state and local police officers executed a warrant to search Santiago's one-bedroom apartment in Sunderland, Massachusetts.  Inside a closet in the bedroom, they found two caches of powder cocaine that together weighed more than a kilogram.  The search also revealed various tools of the trade, including a digital scale (stored next to the drugs), approximately five hundred small plastic bags, several thousand dollars in cash, and a ledger containing an apparent record of transactions.

Santiago was indicted and tried in Massachusetts Superior Court on one count of trafficking in two hundred or more grams of cocaine. Mass. Gen. Laws ch. 94C, § 32E(b)(4) (2008).  His defense was that the drugs and drug-dealing paraphernalia found in his apartment belonged to Oley Saradeth--an acquaintance who stayed in Santiago's apartment from time to time and who died of pneumonia in the interim between the police raid in November 1997 and the trial in October 1998.  Although Santiago testified that the drugs were

-2-

Oley's, this effort to shift blame was hampered by the trial court's refusal to admit into evidence a confession Oley purportedly made to his brother, Fanta Saradeth.

Fanta Saradeth related the putative confession--said to have been made in a private conversation between the brothers in December 1997--at a voir dire conducted before trial. Fanta claimed that Oley took responsibility for the drugs for which Santiago had been arrested:

> Well, [Oley] told me that the drugs that Peter got arrested for was his, and I was stunned. I didn't know what to say. And he just told me that, and then he said a week after he had been arrested, that he had got pulled over and been arrested, and he didn't know what to do. And he said he told him where he had it and went and got it. And that was it. That's all he told me. I didn't want to know anymore. That's all I wanted to know. I didn't want to have nothing to do with it.

Fanta further testified that "the drugs" referred to an unknown quantity of cocaine.

On cross-examination, Fanta clarified his statement, saying that Oley told him that he (Oley) had been stopped in a car a week before Santiago's arrest; that Oley had drugs in the car when stopped; and that the police officer who arrested Oley demanded to know where he had gotten the drugs. Fanta claimed that Oley answered the officer's question, but Fanta denied knowing what answer Oley had given. According to Fanta, Oley visited Santiago's apartment at some point in the week before Santiago's arrest.

Fanta also testified at the <u>voir dire</u> that on April 27, 1998--the day of his brother's death--Oley, Fanta, and Fanta's roommate drove together to the hospital. En route, Oley allegedly asked Fanta to try to get hold of Santiago so that Oley could apologize. Fanta did not inquire further and assumed that the apology related back to the earlier claim that Santiago had been arrested for Oley's drugs. Santiago was prepared to call the roommate at the <u>voir dire</u> to corroborate Fanta's account of this conversation.

The trial court excluded both conversations. The December 1997 admissions by Oley, proffered as statements against penal interest, were excluded on the grounds that they were not truly against Oley's penal interest--being made privately to his brother--and were in any event untrustworthy; the April 1998 apology was excluded on the grounds that it had not been properly disclosed to the Commonwealth and also was not against Oley's penal interest when made. It is these rulings that are the subject of the case now before us.

Ultimately, Santiago was convicted by the jury and sentenced to fifteen years in state prison. On direct review, the Massachusetts Appeals Court affirmed, saying: "For substantially the reasons advanced and the authorities cited in the Commonwealth's Memorandum of Law in Lieu of Brief at 6-20, we discern neither error nor abuse of discretion. <u>Judgement

affirmed." Commonwealth v. Santiago, 746 N.E.2d 595 (Mass. App. Ct. 2001) (unpublished table decision). The Supreme Judicial Court ("SJC") denied further appellate review. Commonwealth v. Santiago, 757 N.E.2d 730 (Mass. 2001) (unpublished table decision).[1]

Santiago then filed a timely petition for a writ of habeas corpus in federal district court, 28 U.S.C. § 2254 (2006), challenging the exclusion of Fanta's testimony on the ground that it violated his rights under the Sixth Amendment to present witnesses in his defense. On this issue, the district court ultimately denied relief but granted a certificate of appealability. Santiago also attacked his conviction on other grounds, but they were not certified for further review and are not before us.

Our review of the district court's denial of habeas relief is de novo. Fortini v. Murphy, 257 F.3d 39, 44 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002). Santiago has exhausted the state remedies available to him for his Sixth Amendment claim, having presenting it both to the Appeals Court and in his request for further review by the SJC. See 28 U.S.C. § 2254(b)(1). Because the Appeals Court decided the claim on the merits, its legal ruling is also arguably entitled to respect under the

---

[1]Santiago's efforts to secure post-conviction relief in the state courts were equally unsuccessful. See Commonwealth v. Santiago, 823 N.E.2d 436 (Mass. App. Ct.) (unpublished table decision), review denied, 830 N.E.2d 1088 (Mass. 2005).

-5-

deferential standard ordinarily entailed by statute--i.e., that the state court ruling must stand unless contrary to, or an unreasonable application of, settled Supreme Court precedent, id. § 2254(d)(1).

This would be so in this circuit even though the Appeals Court acted by summary disposition, merely cross-referencing the arguments in the Commonwealth's brief. See Clements v. Clarke, 592 F.3d 45, 55-56 (1st Cir.), cert. denied, 130 S. Ct. 3475 (2010). The decision remains one on the merits and the basis is easily discerned. But, as this view may be affected by a pending Supreme Court case, Richter v. Hickman, 578 F.3d 944 (9th Cir. 2009), cert. granted sub nom. Harrington v. Richter, 130 S. Ct. 1506 (argued Oct. 12, 2010) (No. 09-587), we note that our disposition would be the same even if we gave no deference whatever to the Appeals Court.

Santiago spends much of his energy attempting to show that the exclusion of Oley's statement was error as a matter of Massachusetts hearsay law. An error of state law standing alone is not sufficient for habeas relief, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), nor is it necessary to the federal constitutional claim. Indeed, the leading Supreme Court precedents holding evidentiary rulings to be constitutional error tend to arise precisely where the state court's ruling--whether excluding

-6-

evidence (as here) or admitting it over defense objection--was correct under state law.

The more dramatic examples come in the latter domain. There, under the aegis of the Confrontation Clause, the Supreme Court has held it to be a constitutional violation to admit against a defendant certain kinds of inculpating hearsay statements. Typically the cases involve hearsay that falls within some hearsay exception but where, nevertheless, the Supreme Court forbids admission in the particular circumstances--the doctrine is still evolving--absent a prior opportunity for the defendant to cross-examine the out-of-court declarant.[2]

The converse problem, presented here, is the exclusion under state law of exculpatory hearsay that the defendant wants admitted. These cases turn on due process notions of fairness. See O'Brien v. Marshall, 453 F.3d 13, 19-20 (1st Cir. 2006). The locus classicus is Chambers v. Mississippi, 410 U.S. 284 (1973), where an apparently reliable third-party confession--corroborated by other evidence and offered to exculpate the accused in a capital case--was excluded in strict compliance with the state's settled (but peculiarly rigid) view of the interplay between the "vouching for your witness" rule and the pertinent hearsay exception for declarations against penal interest, id. at 288-94.

---

[2]See Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531-32 (2009); Davis v. Washington, 547 U.S. 813, 828-32 (2006); Crawford v. Washington, 541 U.S. 36, 65-68 (2004).

Most Sixth Amendment challenges do not involve such extreme facts, and the Supreme Court has been cautious about extending Chambers. See United States v. Scheffer, 523 U.S. 303, 316 (1998); Montana v. Egelhoff, 518 U.S. 37, 52-53 (1996) (plurality opinion). Not every exclusion of hearsay favorable to the defendant violates the right to present a defense. Scheffer, 523 U.S. at 316. The Constitution ultimately demands a fair opportunity to present a defense, and it is generally fair to force a defendant to comply with established rules of procedure and evidence and to abide by the balancing of values such rules represent. Chambers, 410 U.S. at 302.

A central concern of evidence law, and the rule against hearsay in particular, is with the reliability of evidence--especially out-of-court statements by one not available for cross-examination. The pattern created by hearsay law and its exceptions is to exclude such statements save in categories deemed reliable; and sometimes--even within the category--a statement may be excluded if untrustworthy, e.g., Fed. R. Evid. 803(6), or not also shown to be reliable, e.g., Fed. R. Evid. 803(18).[3]

In the present case, Santiago proffered Oley's alleged December 1997 confession as a statement against penal interest. In

_____

[3]Lack of reliability is not the only value to be balanced against possible relevance, see, e.g., Michigan v. Lucas, 500 U.S. 145, 149-50 (1991) (protection of victim); Taylor v. Illinois, 484 U.S. 400, 410-11 (1988) (orderly presentation of evidence), but it is the usual concern in hearsay cases.

-8-

Massachusetts, a statement against penal interest is not admissible to exculpate the defendant in a criminal trial unless (i) the declarant is unavailable; (ii) making the statement "tended so far to subject the declarant to criminal liability that a reasonable man in the declarant's position would not have made it unless he believed it to be true," Commonwealth v. Carr, 369 N.E.2d 970, 973 (Mass. 1977); and (iii) circumstances corroborate the trustworthiness of the statement. Commonwealth v. Drew, 489 N.E.2d 1233, 1239-41 (Mass. 1986); Carr, 369 N.E.2d at 973-74.

This is a fairly conventional statement of the rule, closely parallel to the federal version, Fed. R. Evid. 804(b)(3), and there is no direct claim by Santiago that the rule in the abstract is unconstitutional. Rather, his focus is on the application of the rule by the state court to the present facts-- essentially, an "as applied" challenge to the fit between the generalization and the circumstances. If the state court's assessment was a reasonable application of a reasonable rule, it could hardly violate due process standards of fairness.

In excluding the December 1997 confession, the trial court accepted the Commonwealth's argument that a statement made only to one's brother is not genuinely against the speaker's penal interest because the speaker assumes the statement will remain private; further, the court found that the statement was uncorroborated by any circumstances indicating its trustworthiness.

-9-

Whether the first ground (if intended as a blanket statement rather than a judgment on the particular facts) accords with Massachusetts law is unclear. Compare Commonwealth v. Marple, 524 N.E.2d 863, 869 (Mass. App. Ct. 1988), with Commonwealth v. Galloway, 534 N.E.2d 778, 781 (Mass. 1989). Elsewhere, statements made in private--even when the possibility of future disclosure seems remote--may at least on some facts nevertheless be against penal interest.[4]

Yet private statements, even if potentially against penal interest, are not all the same, and the trial court's grounds of decision in this case overlap: a private confession to a brother, where there is nothing to suggest it will become public while the speaker is alive, is at best minimally "against penal interest" and certainly not (standing alone) shown to have a further hallmark of trustworthiness. Here, the supposed confession, as clarified on cross-examination, is not even a straightforward exculpation of Santiago. It was surely not shown to be "trustworthy" hearsay.

In the end, Santiago has failed to show that the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court; indeed, as already noted, our decision would be the same even if we

---

[4]E.g., United States v. Barrett, 539 F.2d 244, 251 (1st Cir. 1976) (statement to friends over cards); United States v. Goins, 593 F.2d 88, 90-91 (8th Cir.) (statement to daughter in private), cert. denied, 444 U.S. 827 (1979); 2 McCormick on Evidence § 319, at 386 n.24 (K. Broun ed., 6th ed. 2006) (collecting cases).

were considering the issues <u>de novo</u>. For the sake of completeness, we note two further possible difficulties with petitioner's claim, although it is unnecessary to resolve either definitively.

First, it could be argued that a further inference of untrustworthiness might be drawn from the weighty evidence against Santiago. Santiago's apartment was a one-bedroom unit and had only a single bed; he told the police that he lived there alone (and bills, receipts, and other papers confirmed this view); and much of the cocaine in the apartment was found inside a box in the bedroom closet addressed to one "Johnny R. Santiago" at Santiago's apartment number. Santiago's middle name is John.

Santiago says that contradictory trial evidence is not to be considered in assessing the trustworthiness of a declaration against penal interest, citing our decision in <u>Barrett</u>, 539 F.2d at 253. But that case says no such thing, and some precedent--in our court, in Massachusetts courts, and in the Supreme Court--might suggest the contrary, <u>e.g.</u>, <u>Chambers</u>, 410 U.S. at 300-01; <u>United States</u> v. <u>Millan</u>, 230 F.3d 431, 437 (1st Cir. 2000); <u>Drew</u>, 489 N.E.2d at 1241. Here, the result is the same either way.

Second, even if error was found, the independent strong evidence that the drugs were Santiago's could be relevant to the question of prejudice. A constitutional violation, if violation there were, ordinarily would not merit habeas relief unless it had "'substantial and injurious effect or influence in determining the

-11-

jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); cf. Fortini, 257 F.3d at 48. Whether Santiago could establish such harmful effect is at best doubtful; but we need not decide the question as we find no error.

Affirmed.